FINGER, Plaintiff in error, v. STATE, Defendant in error.

*No. State 72. Argued September 4, 1968.—Decided October 1, 1968.*
(Also reported in 161 N. W. 2d 272.)

For the plaintiff in error there was a brief and oral argument by *George N. Kotsonis* of Milwaukee.

For the defendant in error the cause was argued by *Harold B. Jackson, Jr.,* assistant district attorney of Milwaukee county, with whom on the brief were *Bronson C. La Follette,* attorney general, and *David J. Cannon,* district attorney.

HEFFERNAN, J.

*When, following a trial before the court, defendant fails to make either a motion for a new trial or a motion to set aside the verdict, is he entitled to a review of the sufficiency of the evidence in this court*

The defendant concedes that, following the court's finding of guilty and the imposition of sentence, he failed to move for a new trial or to set aside the verdict on the grounds of the insufficiency of the evidence. The general rule adopted by this court is that a review of the evidence will not be conducted on appeal or on a writ of error as a matter of right unless these motions have been made in the trial court. *Okimosh v. State* (1967), 34 Wis. 2d 120, 148 N. W. 2d 652; *State v. Thompson* (1966), 31 Wis. 2d 365, 142 N. W. 2d 779; *State v. Van Beek* (1966), 31 Wis. 2d 51, 141 N. W. 2d 873.

In *State v. Van Beek, supra,* we adopted the principle that, in jury trials in criminal cases, no review of the evidence would be conducted here in the absence of compelling circumstances unless appropriate motions have been made in the trial court. In *Wells v. Dairyland Mut. Ins. Co.* (1957), 274 Wis. 505, 518, 80 N. W. 2d 380, we adopted the rule in appeals from civil jury trials that:

". . . no error of the court should be reviewable *as a matter of right* on appeal without first moving in the trial court for a new trial bottomed on such error, if the error is of a category that a trial court could correct by granting a new trial."

In *Fringer v. Venema* (1965), 26 Wis. 2d 366, 132 N. W. 2d 565, 133 N. W. 2d 809, we were asked that the rule of *Wells v. Dairyland Mut. Ins. Co., supra,* be applied to civil nonjury cases. We declined to extend the rule to nonjury cases, stating, at page 376:

"While we approve and commend the practice, we do not at this time declare it to be mandatory but reserve this question for subsequent opinion or court rule."

The defendant argues that the rule should not be applicable in criminal nonjury cases. He argues that, while in a jury case it is reasonable to have various errors that may have occurred in the course of trial called to the attention of the judge so that he can correct claimed errors, such a rationale is inapplicable in a nonjury case when the errors, if there be any, are those of the judge and the finding is the judge's and not the jury's.

In essence, what the defendant herein is saying is that the judge had to review the sufficiency of the evidence in order to reach his finding and that to ask him to review it again is to require the trial judge to do a useless act. Nevertheless, we conclude that a motion for a new trial or to set aside a finding is not a useless act even though the trial is before the court.

The fact that, in the mind of counsel, a trial judge adopts an erroneous view of the law or makes a faulty appraisal of the evidence in his initial findings does not, ipso facto, mean that he will persist in error, if error there be, when the viewpoint of counsel is called to his attention. There are numerous instances in which judicial errors have been called to the attention of the trial judge on motions after verdict where the judges of this

state have not hesitated to correct their own errors. We have frequently taken the position that a trial judge should be given the opportunity to correct his own errors as well as those that may have been committed by a jury. As has been stated in 39 Am. Jur., *New Trial,* p. 43, sec. 17, referring to the practice in other jurisdictions:

". . . it was the duty of counsel to give the trial court an opportunity, by motion for a new trial, to correct whatever errors *it* may have made in respect to matters which may properly be made the grounds of such a motion." (Emphasis supplied.)

Even in the nonjury case a motion for new trial not only secures a re-examination of the issues of fact but:

" '. . . it serves also to bring to the notice of the trial court errors which may have been committed in the course of the trial, and enables the court to correct such errors without subjecting the parties to the expense and inconvenience of prosecuting review proceedings. . . . 39 Am. Jur., New Trial, p. 42, sec. 17.' " *Ferry v. State* (1954), 266 Wis. 508, 63 N. W. 2d 741.

While we deem it highly desirable that the appropriate motions be made after trial in both jury and nonjury cases, the attorney general has brought to our attention no Wisconsin case requiring such a motion; and, as in *Fringer v. Venema, supra,* while commending the practice of making such a motion, we do not hold that such a motion is mandatory to secure a review of the evidence in a nonjury criminal case, but reserve the question for subsequent opinion or court rule.

*Was there sufficient evidence at trial to prove defendant's guilt beyond a reasonable doubt*

The complaining witness, Willie Caldwell, stated that he had known the defendant for about three years prior to the offense allegedly committed on April 17, 1966. He stated that on that evening he saw the defendant in the

Old Rail Tavern. He also testified that after he left the tavern and was going west on North Avenue in Milwaukee, he noticed two men walking in front of him. At about the time Caldwell and the two who preceded him reached the intersection of Tenth Street and North Avenue, one of the men pulled a gun and forced him into a gangway or passageway behind a store. The other man, whom Caldwell identified as being General Hayes Finger, placed a belt or a cord around Caldwell's neck and forced him into a position so that his wallet could be extracted from his back pocket.

Within a few minutes thereafter, Caldwell testified, he stopped a squad car and reported that he was robbed. He described the individual who placed the rope around his neck to the police officers as "a colored male, 35 to 40, red shirt, dark jacket, approximately 5' 8" tall, medium build, freckles, a mustache, and he is called by the name of Red." The police officers stated that they later went to the Old Rail Tavern and they there recognized Finger as the person described by Caldwell, and also at that time Caldwell pointed out Finger as one of the men who had robbed him.

Caldwell was unequivocal in his identification and on several occasions stated that he could not be mistaken and that he had looked directly into the robber's face at the time of the assault with the belt. He also during the course of trial identified the defendant as being one of the persons who had robbed him.

The trial judge in his review of the evidence also pointed out that the complaining witness' story was corroborated by testimony of the detectives that they noticed that Caldwell's neck was marked and abraded, thus lending some credence to his story that a belt or other object had been "whipped" around his neck.

The burden of proof, of course, is upon the state to prove the defendant guilty beyond a reasonable doubt, and we have stated in *Gauthier v. State* (1965), 28 Wis.

2d 412, 415, 137 N. W. 2d 101, that the burden of proof is the same whether the trial is to the court or the jury. The test is:

". . . whether the evidence adduced, believed and rationally considered by the jury, was sufficient to prove the defendant's guilt beyond a reasonable doubt." *State v. Johnson* (1960), 11 Wis. 2d 130, 137, 104 N. W. 2d 379. *See also State v. Waters* (1965), 28 Wis. 2d 148, 153, 135 N. W. 2d 768.

The defendant, of course, raises some countervailing testimony, which he claims casts a doubt upon the defendant's guilt. In the course of trial the state produced testimony that the money stolen from Caldwell included a $10 bill and also showed that, shortly after the alleged time of the robbery, Finger cashed a $10 bill at the tavern. It was the testimony of Finger, while admitting that he had cashed a $10 bill, that he had been paid the day before and was changing his own money.

The defense also points out the inconsistency of Caldwell's statement that Finger and the other assailant were walking ahead of him just before the robbery, while the testimony of other witnesses is uncontradicted that Finger left the tavern after Caldwell. Numerous explanations, perfectly reasonable in nature, could well have influenced the trial judge to conclude that this apparent inconsistency did not make Caldwell's story inherently incredible.

Although, on our own independent review of the record, we are satisfied of Caldwell's guilt beyond a reasonable doubt, such a conclusion by this court is unnecessary. It is enough that the testimony adduced, if believed, could convince the court of the defendant's guilt beyond a reasonable doubt. As we said in *Gauthier v. State, supra,* page 416:

"It is only when the evidence that the trier of fact has relied upon is inherently or patently incredible that the

appellate court will substitute its judgment for that of the fact finder . . . ."

We are satisfied that the evidence of record was sufficient to support the finding of the trial judge.

### Did the sentence imposed constitute an abuse of the trial judge's discretion

In *State v. Tuttle* (1963), 21 Wis. 2d 147, 124 N. W. 2d 9, we pointed out that this court can properly review the sentence of a lower court. We have stated, however, that the exercise of this court's power to review the sentence imposed by a trial court is "governed by a strong policy against interference with the discretion of the trial court." *Nelson v. State* (1967), 35 Wis. 2d 797, 820, 821, 151 N. W. 2d 694.

In *Jung v. State* (1966), 32 Wis. 2d 541, 145 N. W. 2d 684, this court set forth the criteria to be used in the review of a trial court's exercise of discretion in sentencing. We stated:

"In reviewing a sentence for an abuse of discretion, we start with the presumption that the trial court acted reasonably and with the requirement that the complainant must show some unreasonable or unjustifiable basis in the record for the sentence complained of. Consequently, in the instant case there must be a showing that in determining the sentence of Jung the trial court based its determination upon factors not proper in or irrelevant to sentencing, or was influenced by motives inconsistent with impartiality." *Jung v. State, supra,* page 548.

"[Moreover], it is argued that a plea of not guilty followed by conviction may justify additional punishment because: (1) It displays an uncooperative attitude, (2) the defendant presumably committed perjury, (3) the defendant asserted a frivolous defense, (4) the trial revealed circumstances of the crime which might not have been disclosed on a plea of guilty, or (5) the plea did not contribute to an efficient administration of justice. We

question the validity of these reasons as a basis for increasing the severity of a sentence; certainly they may be invalid in a given case. See, The Influence of the Defendant's Plea on Judicial Determination of Sentence, 66 Yale Law Journal (1956), 204, 209." *Jung v. State, supra,* page 551.

The defendant's argument is primarily directed to the allegation that the trial judge imposed an inordinately severe sentence because the defendant, after a finding of guilty, refused to admit his guilt. There is some support in the record for this contention. After the finding of guilty, the assistant district attorney, after setting forth that the defendant had a prior criminal record, requested a revocation of a prior probation, and said:

"The state recommends that since the defendant has failed to own up to his guilt in this matter that the defendant be sentenced to a consecutive term in the State Prison at Waupun."

At an adjourned sentencing hearing held several days subsequent to the finding of guilt, the trial judge stated:

"You realize since this Court found you guilty last week and the Court told you at that time that you hadn't told the Court the whole truth, the Court outlined to you there was someone else involved, that the excellent police officers of the Milwaukee Police Department who are right here have since picked up your co-conspirator who has admitted his full participation in it as well as your participation in it and every part that you played in it, is that right?"

At a later point in the hearing, the trial judge said:

". . . to this moment, you have refused to tell the truth about your implication in it. That is where we are this morning at 10:28 a. m. on June 2nd, 1966."

Thereafter, the judge imposed a sentence of fifteen years. That the sentences were concurrent and not consecutive, as requested by the district attorney, is proba-

tive of the trial judge's decision not to follow the suggestion of the district attorney. While the court indicated its displeasure with the fact that the defendant refused to confess his guilt, we find no evidence that this displeasure materially influenced the judge's discretion or that the judge abused his discretion in imposing the sentence that he did and, hence, we decline to reverse. Armed robbery carries the penalty of not more than thirty years. The judge chose to impose only half of the legislative maximum. While the sentence is a severe one, it no doubt reflected the concern of the trial judge with robbery committed at gunpoint. Moreover, the trial judge had before him the defendant's prior criminal record and had the recommendation of the probation department, conveyed to him by the assistant district attorney. It has been stated that, "Legislative provision of ranges of possible sentences does not imply that judges are to exercise unreasoned discretion." *Procedural Due Process at Judicial Sentencing for Felony*, 81 Harv. L. Rev. (1968), 821, 843.

We do not deem that the trial judge's imposition of sentence was unreasoned or constituted an abuse of discretion.[1]

*By the Court.*—Judgment affirmed.

---

[1] In the instant case, after making the finding of guilty, but before sentencing, the trial judge gave the defendant one last opportunity to show his contrition. The defendant was, after trial, confronted with the statements of the co-perpetrator of the crime which implicated him. He was asked then to confess his guilt.

This we deem places even a criminal, already found guilty, on the horns of a dilemma, for it is apparent that his failure to confess will result in a heavier sentence. The duress of this situation would be most unlikely to produce a free and voluntary confession. The effect might well be to penalize him for asserting the right to force the state to prove its case. The consequence may be a sentence that is imposed in part for the assertion of a constitutional right of trial. *United States v. Wiley* (7th Cir. 1959), 267 Fed. 2d 453, 456, in referring to the Federal Probation Act, 18 USCA, sec. 3651, pointed out that in determining probation, a court should make

"no distinction between offenders who have pleaded guilty and those who have stood trial."

We believe the same rationale should be employed when imposing sentence. We agree with the statement appearing in *United States v. Wiley* (7th Cir. 1960), 278 Fed. 2d 500, 504, where the court said, ". . . justice requires that we reject the theory that a person may be punished because in good faith he defends himself when charged with a crime, even though his effort proves unsuccessful."

We also agree with the court of appeals in the first *Wiley Case* (267 Fed. 2d 453, 456), which concluded that the interposition of a frivolous defense showing lack of good faith forcing a trial and unreasonably burdening a court is properly a matter to be considered in denying probation. We conclude the same rationale to be apposite in determining the length of sentence. If the defense is frivolous, or there is evidence of bad faith, the trial judge should indicate in the record that the sentence imposed was the result of the exercise of discretion in light of frivolousness or bad faith.

Of course, it should be unnecessary for this court to point out that a trial judge should not attempt to induce a post-finding confession to bolster his own confidence in the close case.