STATE, Respondent, v. HARLING, Appellant.*

*No. State 17. Argued September 8, 1969.—Decided October 3, 1969.* (Also reported in 170 N. W. 2d 720.)

* Motion for rehearing denied, without costs, on November 25, 1969.

268

270

For the appellant there was a brief by *Shellow, Shellow & Coffey* and *Robert H. Friebert,* all of Milwaukee, and oral argument by *Mr. Friebert.*

For the respondent the cause was argued by *Theodore J. Hodan,* assistant district attorney of Milwaukee county, with whom on the brief were *Robert W. Warren,* attorney general, and *E. Michael McCann,* district attorney.

BEILFUSS, J.   The contentions of the defendant raise five issues, to wit:

1.  Was it error to allow Dr. Kuhn to give his opinion as a medical expert in response to questions not couched in terms of a "reasonable degree of medical certainty?"

2.  Was it error to refuse to allow inquiry on cross-examination regarding any bias Dr. Kuhn might hold generally against abortions?

3.  Should the defense have been allowed to introduce as negative evidence the absence of abortion paraphernalia in defendant's house when searched by police?

4.  Was the evidence sufficient to support a finding of guilty beyond a reasonable doubt?

5.  Was a three-year sentence excessive?

Dr. Kuhn is a licensed physician and surgeon and a specialist in obstetrics and gynecology.

There were two inquiries put to this qualified expert by the state to which the defense now makes objection. The first question sought an opinion from the doctor as to whether the fetus was alive at the time of the abortion. This question was phrased in these terms:

"And, doctor, based upon your experience and training, observations of Miss Gregory, do you have an opinion as to whether or not the fetus which was aborted by Miss Gregory was alive at the time that it was aborted?"

The doctor answered: "My opinion is that the fetus was alive for these reasons: The size of the uterus was compatible with a three-month gestation, the amount of bright red blood that the patient passed with the aborted fetus and the description of the fetus both as to color and size are compatible with a live pregnancy. A dead fetus would not be red. One that had been dead would be brown through rotting."

No objection to the question was made at the trial but defendant now asserts that it was improper to ask for such an opinion except in terms of "a reasonable degree of medical certainty." In the absence of such objection at the trial, clearly it is not subject to review now. In *Roberts v. State* (1969), 41 Wis. 2d 537, 548, 164 N. W. 2d 525, it is stated:

"Objection is made that the psychiatrist gave his opinion but not to a reasonable medical certainty but rather positively as his conclusion. No objection was made at the trial and in the absence of such objection, the evidence was admissible."

The second question to the doctor to which the defendant takes exception upon appeal pertains to the commission of the abortion itself.

The question, the objection, the ruling and the answer are as follows:

"*Q.* Based upon your experience, training and observations of Miss Gregory, do you have an opinion as to the manner in which this abortion took place or was caused?

"*Mr. Schrinsky:* Object to that as calling for a conclusion and not being the best evidence, too indefinite.

" . . .

"*The Court:* You may answer the question.

"*A.* Absolutely. This is a textbook picture of criminal abortion and that it was performed by someone other than the patient for these reasons.

"*By Mr. Manian:*

"*Q.* Yes, would you state the reason.

"*A.* The cervix, were it attacked by the patient, would have had to have been visibly traumatized for her to have gained entry into the uterus. Only upon direct vision, and then with considerable difficulty, I might add, may the cervix be entered; and this, of course, is manifestly impossible."

The objection as stated is not proper. If the objection to the question had been made upon the ground that a

proper foundation had not been laid, and to the form of the question, it should have been sustained.

The defendant complains that the question did not properly qualify the opinion of the expert to a reasonable degree of medical certainty. We have stated above that this objection must be made at trial and in the absence of the objection the testimony is admissible.

The defendant further claims it was error to permit the question to be answered because it allowed the witness to base his answer on hearsay and that he was incompetent to answer the question simply because he was not there and, as such, invaded the province of the trier of the facts.

The question to be proper in form should have been hypothetical so as to include the statements and observations of the prosecutrix. In this instance a proper objection was not made and the answer of the expert witness supplies the hypothesis of a proper question. Under these circumstances the error, if it be one, is not prejudicial.

In the defendant's attempt to impeach the testimony of Dr. Kuhn, the following question was asked by defense counsel on cross-examination:

"Doctor, you have a prejudice against anyone charged with having committed a criminal abortion, as you call it, have you not?"

The trial court sustained an objection that the question was argumentative.

Defendant asserts that her constitutional right to confront the witnesses against her has been denied by this ruling and cites *Alford v. United States* (1931), 282 U. S. 687, 51 Sup. Ct. 218, 75 L. Ed. 624, for the proposition that, "Cross-examination of a witness is a matter of right." The state does not dispute the defendant's right to cross-examine into bias, but objects on the ground that bias can only be shown if it is bias against the par-

ticular defendant. The question put by the defense was phrased in terms of anyone who might be situated as was the defendant. Thus, the crux of the issue is whether it is probative of prejudice against this defendant that the doctor might be prejudiced against all persons charged with having committed criminal abortions.

Interest and bias are generally defined in 98 C. J. S., *Witnesses*, p. 475, sec. 538:

"As affecting the credibility of a witness, interest signifies the specific inclination which is apt to be produced by the relation between the witness and the facts at issue in the litigation, and bias is any circumstance which tends to create a partisan feeling."

The same section further points out that the particular interest of a witness may be from various sources:

"While pecuniary interest of the witness is the most common source of bias, close relationship to the party for whom he testifies, hostility to the opposite party, or any other circumstance which, according to common observation and experience, tends to create a partisan feeling, also gives rise to bias."

The right to conduct a cross-examination into matters of bias and interest is set forth in 4 Jones, *Evidence* (5th ed.), *Cross-Examination*, p. 1719, sec. 916:

"Cross-examination would be of little value if a witness could not be freely interrogated as to his motives, bias and interest, or as to his conduct as connected with the parties or the cause of action; . . ."

The privilege of cross-examination on matters of bias and interest has been recognized by this court in *Peurala v. Hurley* (1951), 258 Wis. 592, 599, 46 N. W. 2d 855:

"Bias in common parlance covers all varieties of prejudice; and interest signifies the specific inclination which is apt to be produced by the relation between the witness and the facts at issue in the litigation. This method of examination, controlled by the sound discretion of the

trial judge, results from the reason that it is probable that particular conduct and circumstances form the only means practically available for effectively demonstrating the existence of a bias in favor of a party amounting to an influential interest prompting one to see things favorably to one side or the other. It is usually developed on cross-examination."

We are of the opinion that if it can be shown that a witness is prejudiced or biased against persons of a class, generally this can be shown. If the prejudice is to a class, generally, in all probability it extends to individual members of the class. We have stated that considerable latitude should be extended to defendants in criminal cases in cross-examination of expert witnesses.[1] We are of the opinion it was error to sustain the objection to the question of possible bias of the expert witness. However, we are again of the belief the error was not prejudicial and cannot be the basis for a reversal under sec. 274.37, Stats., which provides:

"**Judgments; application to reverse or set aside; new trial; reversible errors.** No judgment shall be reversed or set aside or new trial granted in any action or proceeding, civil or criminal, on the ground of misdirection of the jury, or the improper admission of evidence, or for error as to any matter of pleading or procedure, unless in the opinion of the court to which the application is made, after an examination of the entire action or proceeding, it shall appear that the error complained of has affected the substantial rights of the party seeking to reverse or set aside the judgment, or to secure the new trial."

We further point out that this case was tried to the court without a jury and that the burden of showing prejudice because of procedural or evidentiary error is considerably greater than a trial before a jury.

In *Gauthier v. State* (1965), 28 Wis. 2d 412, 421, 137 N. W. 2d 101, we stated:

---

[1] *State v. Rice* (1968), 38 Wis. 2d 344, 353, 156 N. W. 2d 409.

"Additionally, though it appears that all the evidence of which the defendant complains was properly admitted, it should be remembered that this was a trial before the court and not a jury. While evidence that is not admissible in a jury trial is equally inadmissible in a trial to the court, yet this court views the situation as distinct. We have previously stated:

" 'In a case tried by the court the admission of improper evidence is to be regarded on appeal as having been harmless, unless it clearly appears that but therefor the finding would probably have been different.' *Birmingham v. State* (1938), 228 Wis. 448, 454, 279 N. W. 15, quoting from *Topolewski v. State* (1906), 130 Wis. 244, 109 N. W. 1037."

In *Roberts v. State, supra,* at page 547, we said:

"Roberts claims several evidentiary errors and prejudicial rulings deprived him of a fair trial. When a case is tried to the court, this court on review looks upon errors in the receipt of evidence somewhat less critically on the issue of prejudice than when the case is tried to the jury. This is especially true when the conviction has been allowed to stand by the trial court after it has had its attention directed to the alleged errors on motions after verdict and thus it has had a chance to re-evaluate its fact-finding process. *Gauthier v. State* (1965), 28 Wis. 2d 412, 137 N. W. 2d 101, certiorari denied, 383 U. S. 916, 86 Sup. Ct. 910, 15 L. Ed. 2d 671; *State v. Cathey* (1966), 32 Wis. 2d 79, 145 N. W. 2d 100; *Ray v. State* (1967), 33 Wis. 2d 685, 148 N. W. 2d 31."

Defendant argues that she should have been allowed to testify that to her knowledge the Milwaukee police found no abortion paraphernalia upon searching her house. She further asserts that it was error to deny questioning of her husband and daughter about hearing any sounds from the upstairs bedroom while the prosecutrix was in the house.

In opposition to the fruitless search issue the state cites *Findorff v. Findorff* (1958), 3 Wis. 2d 215, 226, 88 N. W. 2d 327, which requires the making of an offer of proof as to the rejected testimony before the ruling can be

reviewed by this court. The theory of the requirement is to provide this court with something more than speculation as to the content of the offered testimony. The offer-of-proof-requirement has been reaffirmed in *Rausch v. Buisse* (1966), 33 Wis. 2d 154, 167, 146 N. W. 2d 801, and *Hales Corners Savings & Loan Asso. v. Kohlmetz* (1967), 36 Wis. 2d 627, 633, 154 N. W. 2d 329.

However, in *Fullerton Lumber Co. v. Korth* (1964), 23 Wis. 2d 253, 259, 127 N. W. 2d 1, quoting 6 Jones, *Commentaries on Evidence* (2d ed.), p. 4998, sec. 2526, we stated that where the evidence offered was self-evident an offer of proof need not be made. In this instance answers to the questions were made and appear in the record, although ordered stricken. Little would be added by way of an offer of proof. The answers were that nothing was found and that no noises were heard. This testimony, if received, would have had very little probative effect and its exclusion does not reach the stature of reversible prejudicial error.

The well-established test in Wisconsin for reviewing the sufficiency of the evidence in a criminal appeal is set forth in *State v. Zwicker* (1969), 41 Wis. 2d 497, 518, 519, 164 N. W. 2d 512:

". . . 'On an appeal in a criminal case the test of the sufficiency of the evidence for a conviction is "whether the evidence adduced, believed and rationally considered by the jury, was sufficient to prove the defendant's guilt beyond a reasonable doubt." ' *State v. Stevens* (1965), 26 Wis. 2d 451, 463, 132 N. W. 2d 502; *State v. Johnson* (1960), 11 Wis. 2d 130, 137, 104 N. W. 2d 379."

The defendant challenges the sufficiency of the evidence on only one element of the offense, namely that the fetus was alive as required by sec. 940.04 (2), Stats. This court specifically approved a presumption of life in abortion cases in *State v. Gresens* (1968), 40 Wis. 2d 179, 185, 161 N. W. 2d 245, a presumption set forth in the Wisconsin Jury Instructions—Criminal, Part II, sec.

1125. The trial court, sitting as the trier of fact in this case, took note of this jury instruction in making its decision. The defendant argues that, according to the following language, the trial judge did not rely on the presumption of life:

"Court is not ultimately resting its decision upon this particular factor, but merely refers to it as evidence of the fact that the Court has given careful consideration to the question of the guilt or innocence of this defendant, as would a jury."

It is clear from that language in the trial court's decision that the presumption was not ignored.

Defendant admits in her brief that if the case had been tried to a jury, "the evidence might be sufficient to support a finding of guilty in this case. The presumption could be deemed to have been utilized by the trier of fact."

Even if the presumption was not utilized in the case the testimony of Dr. Kuhn that the fetus was alive still stands in the record with no objection thereto having been registered in the trial court. All the factual elements necessary to sustain the conviction appear in the credible evidence of the case and the evidence is sufficient to sustain the finding of guilt.

The defendant was sentenced to a term of three years imprisonment, the maximum term, with the exception of a $5,000 fine also available.

The standard of review to be applied on this issue has been summarized in *Finger v. State* (1968), 40 Wis. 2d 103, 111, 161 N. W. 2d 272:

"In *State v. Tuttle* (1963), 21 Wis. 2d 147, 124 N. W. 2d 9, we pointed out that this court can properly review the sentence of a lower court. We have stated, however, that the exercise of this court's power to review the sentence imposed by a trial court is 'governed by a strong policy against interference with the discretion of the trial court.' *Nelson v. State* (1967), 35 Wis. 2d 797, 820, 821, 151 N. W. 2d 694.

"In *Jung v. State* (1966), 32 Wis. 2d 541, 145 N. W. 2d 684, this court set forth the criteria to be used in the review of a trial court's exercise of discretion in sentencing. We stated:

" 'In reviewing a sentence for an abuse of discretion, we start with the presumption that the trial court acted reasonably and with the requirement that the complainant must show some unreasonable or unjustifiable basis in the record for the sentence complained of. Consequently, in the instant case there must be a showing that in determining the sentence of Jung the trial court based its determination upon factors not proper in or irrelevant to sentencing, or was influenced by motives inconsistent with impartiality.' *Jung v. State, supra,* page 548."

The defendant asserts that the presumption of reasonableness was rebutted by the following comment of the trial judge upon sentencing:

"Counsel suggested before that one of the witnesses had a bias against persons accused of having committed an offense of this type. This Court has some very definite feelings of one who has been found guilty of such an offense. It has expressed its feelings by the disposition which it has imposed."

A very analogous situation was recently disposed of by this court in *Deja v. State* (1969), 43 Wis. 2d 488, 495, 168 N. W. 2d 856:

"The trial court's comment to which objection is made came at the time of sentencing after hearing the statement of defense counsel. The court said, 'When are you going to begin thinking about protecting society. You always protect the individual; don't you think that society should be protected just once?' While, thus isolated and separated from what went before, the comment and question may well seem unnecessarily abrasive, they were made after the defendant had been found guilty of operating a motor vehicle without the owner's consent. Given the fact and finding of guilt, they are a strongly worded but not inaccurate reminder that sentencing alternatives are to be evaluated by a trial court in the light of protecting the community and society as well as considering the welfare and well-being of a convicted defendant."

While it is certainly possible to conclude that the trial court has personal unfavorable feelings toward persons convicted of abortion, it should be pointed out that evidence reveals the prosecutrix was very near death for at least several hours and that the trial court could justifiably believe the defendant had committed perjury in the trial. We cannot conclude an indeterminate sentence of not more than three years is excessive.

*By the Court.*—Judgment and order affirmed.

* Motion for rehearing denied, without costs, on December 19, 1969.