RILEY, Plaintiff in error, v. STATE, Defendant in error.

*No. State 173. Argued June 5, 1970.—Decided July 1, 1970.*
(Also reported in 177 N. W. 2d 838.)

For the plaintiff in error there was a brief and oral argument by *John S. Schlom* of Waupun.

For the defendant in error the cause was argued by *Jeffrey B. Bartell,* assistant attorney general, with whom on the brief was *Robert W. Warren,* attorney general.

BEILFUSS, J. The sole issue is whether the imposition of a four-year sentence for defendant's conviction on escape was an abuse of discretion by the trial court.

In *State v. Tuttle* (1963), 21 Wis. 2d 147, 124 N. W. 2d 9, this court modified the rule regarding review of sentences and declared that it has the power to review sentences within the statutory limits to determine whether an abuse of discretion clearly appears, and the power to remand for resentencing or modifying the sentence. The manner in which such review will be conducted was described at pages 150, 151:

"It seems to us that this question should be treated in terms of strong policy against interference with the discretion of the trial court in passing sentence and not of lack of power to do so. We are very reluctant so to

interfere. The trial court has great advantages in considering all relevant factors, including the opportunity to observe the defendant, which it always has in felony cases and ordinarily in other cases.

". . . We consider that we have the power to review sentences to determine whether an abuse of discretion clearly appears, and to remand for resentencing or to modify a sentence. We withdraw all past statements indicating that the court lacks power to do so, although it will be a rare case where the power will be used."

The method of reviewing the trial court's discretion was further amplified in *Jung v. State* (1966), 32 Wis. 2d 541, 548, 145 N. W. 2d 684:

"In reviewing a sentence for an abuse of discretion, we start with the presumption that the trial court acted reasonably and with the requirement that the complainant must show some unreasonable or unjustifiable basis in the record for the sentence complained of. Consequently, in the instant case there must be a showing that in determining the sentence of Jung the trial court based its determination upon factors not proper in or irrelevant to sentencing, or was influenced by motives inconsistent with impartiality."

And in *State v. Woodington* (1966), 31 Wis. 2d 151, 183b, 142 N. W. 2d 810, 143 N. W. 2d 753, we said:

"Appellant filed a separate motion, seeking review and modification of the sentence imposed. In essence this is also a motion for rehearing, but upon a ground not even hinted at in the briefs on appeal. We did say in the opinion that the sentence 'seems quite severe,' but by no means went so far as to characterize this as one of the 'rare' cases where 'an abuse of discretion clearly appears' so as to overcome our 'strong policy against interference with the discretion of the trial court in passing sentence . . . .'"

In *Price v. State* (1967), 37 Wis. 2d 117, 135, 154 N. W. 2d 222, we stated that it was only in "unusual" cases that this court would not defer to the judgment of the sentencing court. Moreover, as pointed out by the attorney general, the weight of the burden in showing

an abuse of discretion is evidenced by the consistent refusal to overturn the sentences in all of the cases following *Tuttle* and *Jung, supra*.[2]

In an attempt to demonstrate an abuse of discretion by the sentencing court the defendant makes reference to the mitigating facts and circumstances he introduced at the trial and the hearing on his motion to vacate the sentence.

At the time of his escape the defendant was an inmate at the pre-release center (Walworth Correctional Center, Elkhorn, Wisconsin) awaiting release on parole. He escaped August 23, 1967, approximately fourteen days before his parole release date. He testified that on the evening of that date, as he returned to his room, he found a letter on his bed supposedly from his sister informing him their mother had died at her home in Hammond, Indiana, and claimed the letter stated the funeral was scheduled for that weekend.

Riley testified he deliberated for some two hours what action he should take and then walked away from the pre-release center and went to Hammond, Indiana. Upon defendant's arrival at the funeral home in Hammond he discovered nothing was known about his mother's funeral; further checking with the coroner's office yielded no helpful information. Because he was unaware of his mother's whereabouts the defendant argues he was apparently the victim of a practical joke perpetrated upon him by one of his fellow prisoners.

The defendant did not return to the Wisconsin Correctional Center nor contact local police officials but wandered about the nation for over fourteen months until he gave himself up in November, 1968, to a county police officer in the state of Oregon, waived extradition and was returned to Wisconsin.

[2] *See: Nelson v. State* (1967), 35 Wis. 2d 797, 151 N. W. 2d 694; *Price v. State, supra; Finger v. State* (1968), 40 Wis. 2d 103, 161 N. W. 2d 272; *Deja v. State* (1969), 43 Wis. 2d 488, 168 N. W. 2d 856; *State v. Harling* (1969), 44 Wis. 2d 266, 170 N. W. 2d 720; *Cheney v. State* (1969), 44 Wis. 2d 454, 171 N. W. 2d 339, 174 N. W. 2d 1.

The record further shows that after the defendant was returned to the Wisconsin State Prison another false communique was allegedly received from his sister in January, 1969, indicating an upcoming prison visit by his mother. Investigation by prison authorities revealed defendant's sister had not forwarded the false message either in 1967 or 1969, a factor the defense argues tends to corroborate Riley's explanation of his escape. The defendant also argues the escape offense was mitigated by the absence here of any of the other crimes which frequently accompany prison escapes, namely, various forms of injury to either persons or property, or theft in effecting the escape.

At the hearing on the motion to vacate the sentences the testimony of a prison social worker, James Gruenberg, was introduced respecting defendant's prison record. This evidence was to the effect defendant had been examined by psychiatrists and psychologists who found him to be of an unstable character, that he tends to run from problems, has poor judgment, poor impulse control, lacks insight and has been treated for problems of anxiety.

Following the defendant's plea of no contest the state introduced a number of facts into the record for the trial court's consideration on sentencing. Defendant's criminal record was presented which consisted of a 1961 auto theft conviction in Wyoming for which he received a sentence of twelve to eighteen months; a 1963 conviction for aiding and abetting theft and fraud for which he was sentenced to two and one-half years in the Wisconsin State Reformatory; a 1965 conviction for escape from the reformatory and operating a vehicle without consent for which he received three years and one year respectively, concurrent but consecutive to previous sentences to the reformatory. Additionally, the state points out the defendant remained at large for fourteen and one-half months before he surrendered, and that the state was

put to a substantial amount of expense in returning him here from Oregon.

A principal argument made by the defendant is that the sentencing judge looked only to the record of a prior escape in imposing the four-year sentence, disregarding all the mitigating factors presented. Reference is made to the following statement by the court at the time sentence was imposed:

*"The Court:* Well, I'll tell you, I made it a practice to be very considerate of anybody on first offense. I have been giving the minimum that is permissible under the law for one year where there hasn't been any severe injury done to either person or property. Where there is evidence of property damage, theft of vehicle or other considerations that should be incurred, like expense, great expense in getting the defendant back, those things are all taken into consideration in determining the disposition. On second offense of prison escape, we have been quite severe on that. We have gone to the maximum of five years. If you have anything to say in addition to what you said, why I shouldn't go to that maximum, I'd like to be so advised. The record indicates you were gone from the 23rd of August, 1967, to November 30th, 1968."

The defendant also points to the following statement made at the hearing on the motion to vacate the sentence as probative of an abuse of discretion:

*"The Court:* I based this disposition principally on the fact that it was a second offense and I took into consideration the facts that were related to this court. I don't think even if you offered to this court a string of other circumstances I won't go beyond the disposition that I made here, because this is second offense. He is going into this with full knowledge of what happens in the event he commits an escape. The first offense, let me see, took place no more than two years before, I believe. He was brought back from Gold Beach, Oregon, no doubt at great expense to the state even though he waived extradition. His record indicates an escape from the Wisconsin State Reformatory; at that time he received three years and one year concurrent, that one year involving the taking of a vehicle. Certainly on second

escape, I could not give the same disposition of three years that was given in the first instance."

The state argues that even if the sentencing court considered only one factor in imposing the four-year sentence, that does not per se establish an abuse of discretion. In *Price v. State, supra,* it was urged the only apparent basis for the greater sentence imposed on Price as compared with his partner, Rogers, is that he entered a plea of not guilty while Rogers pleaded guilty. On that matter this court said, at page 136:

"Even assuming that the sole basis for the different sentences was the fact that Rogers entered a plea of guilty and testified, whereas defendant entered a plea of not guilty and demanded a jury trial, this in itself would not warrant a reduction in defendant's sentence."

The present record clearly indicates the sentencing court took into consideration the mitigating factors presented by the defendant as well as the factors which justify more than a minimum sentence. The court stated that it considered giving the maximum sentence of five years and indicated it has often imposed such a sentence for second escapes, but because no other crime was committed in connection with this escape a sentence of one year less than maximum was imposed.

We conclude that the sentence imposed is within the prescribed statutory limits, that the court gave consideration to the relevant factors to assist in the imposition of sentence, and that no abuse of discretion has been shown.

*By the Court.*—Judgment and order affirmed.

ROBERT W. HANSEN, J. (*concurring*). The writer concurs in affirmance, but would go further than the majority opinion by returning to trial courts in this state the right to impose sentences within statutory limits. The holding in *State v. Tuttle* (1963), 21 Wis. 2d 147, 124 N. W. 2d 9, and all cases which have affirmed that

holding, should be reversed and repudiated. It is true that, as the majority opinion points out, this court, except in *Tuttle,* has not substituted its judgment for that of the sentencing judge in any subsequent case. However, the assertion of the right so to do continues, and, as the dissenting opinion here demonstrates, the temptation to do so remains. It should be removed.

The adage—"You can't tell a book by its cover,"—fits well the sentencing phase of a criminal trial. In fact, if the book is the transcript of courtroom proceedings, you cannot find what you need to know in the cold type of the printed record. This court has acknowledged that ". . . the standards guiding the imposition of criminal sentences and for testing the propriety of a sentence are not universally agreed upon." *Jung v. State* (1966), 32 Wis. 2d 541, 548, 145 N. W. 2d 684. It would be well to add the acknowledgment that the opportunity to observe the defendant, his attitude, his demeanor and his behavior, is an essential element in determining whether incarceration is indicated, and for how long a period. Other factors, in the record and presentence report, do enter into the evaluation of the total situation as to sentencing alternatives. But, at best, a reviewing court, relying upon a record or the briefs of contending parties, has no opportunity to observe the person who committed the crime, and so a vital ingredient is missing for the complex and difficult process of determining the appropriate disposition of the case.

If it is contended that disparity in sentencing results would be lessened by appellate court review of sentences imposed, it should be noted that the reviewing court presumably possesses no right to increase sentences, only to reduce them. Beyond reach is a sentence that might well be considered excessively lenient and consequently disparate, compared to sentences imposed in similar situations by other courts. One need not support any of the various proposals for legislative action to promote greater uniformity in sentencing procedures to point out that all

of them limit the reviewing agency created to eliminating disparate results, and authorize adjusting sentences up or down to further this goal. Certainly full and continuing information on all sentences imposed in all cases would have to be available to such sentence review agency as establishing a basis for comparisons. It is probable that the broadened parole and conditional release programs in this state serve the purpose of equalizing penalties imposed. In any event, the discussion and decision in this area belong to the legislative branch of our government, not the judicial.

The writer joins the majority in not walking through the door left ajar by *Tuttle,* but would close and lock that door, leaving the sentencing of the defendant within statutory limits to the trial judge who has the record and the defendant before him. There is no basis for believing that greater wisdom in determining an appropriate disposition could or would be shown by an appellate court that never saw the defendant.

HALLOWS, C. J. (*dissenting*). I think an escapee who gives himself up voluntarily after one year and two months on the outside without getting into trouble during that time deserves something less than four more years of prison and the forfeiture of his earned good time. In my view, the trial court abused its discretion in not giving sufficient consideration to the mitigating factors and too much consideration to the past criminal record. Punishment is only one purpose of confinement. Rehabilitation of a prisoner who voluntarily gives himself up under the facts of this case is made more difficult by this kind of sentence.