STATE, Respondent, v. SCHILZ, Appellant.

*No. State 124. Argued February 5, 1971.—Decided March 2, 1971.*
(Also reported in 184 N. W. 2d 134.)

For the appellant there was a brief and oral argument by *Robert J. Lerner* of Milwaukee.

For the respondent the cause was argued by *Michael Malmstadt,* assistant district attorney of Milwaukee county, with whom on the brief were *Robert W. Warren,* attorney general, and *E. Michael McCann,* district attorney.

HEFFERNAN, J. The record indicates that the defendant at the time of trial was nineteen years old. He admitted that he had been convicted of juvenile crime and also that he had had more than one misdemeanor conviction as an adult. No request for a presentence in-

vestigation was made. Before sentencing, the trial judge stated:

"His answers were sarcastic to the district attorney and in this court's opinion, he is a deliberate, bold-faced liar and will be treated as such by this court. His address tomorrow will be the Wisconsin Reformatory for Men."

The trial judge then asked the defendant if he wished to say anything before sentence was imposed. The defendant responded that he was sorry for what he had done and that he did not want to go to jail. The judge stated:

"Son, you have been involved with a gang who attacked this girl and this will not be tolerated at any time. You impress me as being a wise smart alec as you sat up here, and with your gang you attacked this young girl and thought it was really smart and you were really beyond the law to have your friend beat her up two or three times so you could attack her."

On postconviction motions it was stipulated that one of the other young men who was involved in this incident was never apprehended. Juvenile jurisdiction was waived in regard to another and he was charged in the Milwaukee circuit court and, after a plea of guilty on a reduced charge of fornication, was fined $200 and sentenced to six months in the county jail. Another defendant, aged seventeen, who was on juvenile parole at the time, was continued on parole and was not referred to court for further proceedings. The boy Bob who allegedly slapped and cut the victim was on juvenile parole at the time and he was not referred to any court for his role in the alleged crime. Another of the boys was charged with battery, was convicted, and received a suspended sentence.

At the postconviction hearing the defendant admitted that he had had intercourse with the girl and that he

had testified falsely at his trial. He testified that, had there been a lesser charge, he would have pleaded guilty. Following the motions and in response to the arguments of the defendant's attorney, the trial judge stated:

"And I wonder, Mr. Lerner, if you were sitting on the bench, if you would not feel the same way, to protect a young, innocent sixteen-year-old girl and to protect society from this pack of animals, and I wonder if you would not feel different if it was your sister or your mother or someone who you knew who was attacked by these animals."

The previous sentence of an indeterminate term of four years was reaffirmed by the trial judge, who stated:

"I have an obligation to society and to that little girl; and this young man—I am using the term loosely—conducted himself as a raving maniac—an animal—and saw that this girl was beat up twice so that she would submit to him. If I made an error, it was in not making the sentence five years."

Since *State v. Tuttle* (1963), 21 Wis. 2d 147, 124 N. W. 2d 9, we have recognized that this court has the power to review sentences to determine whether an abuse of discretion has occurred. However, there is a strong policy against interference with the trial court's sentencing discretion, and on review this court will reverse or modify the sentence only when there has been a clear abuse of discretion. *McCleary v. State* (1971), 49 Wis. 2d 263, 182 N. W. 2d 512; *Riley v. State* (1970), 47 Wis. 2d 801, 177 N. W. 2d 838; *Cheney v. State* (1969), 44 Wis. 2d 454, 171 N. W. 2d 339, 174 N. W. 2d 1.

In *McCleary v. State, supra,* page 277, we said that review of a sentence is like review of any other discretionary matter. First, there must be evidence that discretion was in fact exercised. We said:

"Discretion is not synonymous with decision-making. Rather, the term contemplates a process of reasoning. This process must depend on facts that are of record or

that are reasonably derived by inference from the record and a conclusion based on a logical rationale founded upon proper legal standards."

In the instant case, the defendant contends that the failure of the trial judge to order a presentence investigation establishes a failure by the judge to exercise discretion based on the facts in the record or reasonably inferable therefrom. The American Bar Association *Standards Relating to Sentencing Alternatives and Procedures* (Approved Draft, 1968), p. 200, sec. 4.1 (b), states:

"The court should explicitly be authorized by statute to call for such an investigation and report in every case. The statute should also provide that such an investigation and report should be made in every case where incarceration for one year or more is a possible disposition, where the defendant is less than [21] years old, or where the defendant is a first offender, unless the court specifically orders to the contrary in a particular case."

The value of the presentence investigation and report is well recognized by experts in the field of corrections. In a recent study, the President's Commission on Law Enforcement and Administration of Justice concluded:

"In the vast majority of cases . . . the judge's exposure to a defendant is far too cursory to give an adequate impression of his character and background for determination of the best correctional treatment for him." *Task Force Report: Corrections*, p. 18 (1967).

The presentence investigation and report are not only invaluable in reaching a sound sentencing decision, they are also important sources of information upon which decisions concerning the institutional handling of the defendant, parole of the defendant, and revocation of parole are based. President's Commission, *supra*, and American Bar Association *Standards Relating to Sentencing Alternatives and Procedures*, pp. 204, 205, sec.

4.1, comment b. The American Bar Association committee impliedly recognizes that, in cases where the issue of guilt is disposed of by trial, the judge has more information on which to base the sentence than he does in cases involving guilty pleas. Nevertheless, the committee recommends that a presentence investigation be held in either type of case.

"The point, in any event, is that serious consequences turn on the correct resolution of the sentencing decision, and it is sheer folly to attempt such a decision without more information than is typically provided by the guilt determining process." American Bar Association *Standards Relating to Sentencing Alternatives and Procedures*, p. 205, sec. 4.1, comment b.

In the instant case the trial judge sentenced Schilz without the benefit of a presentence report. However, the judge had the benefit of much of the information that would normally be contained in such report. He knew the defendant's age, his educational record, and his employment performance. He knew that he had been convicted of juvenile offenses and that he had been convicted of multiple misdemeanors as an adult. He was able to judge the defendant's demeanor on the witness stand. The details of the crime and the facts that showed the heinousness of the defendant's conduct were fully of record. The trial revealed the defendant's degree of culpability.

While the defendant has been charged only with sexual intercourse with a minor, the evidence is abundant that this was not an act consented to by the child. On the contrary, there were repeated applications of overwhelming force which makes the act here involved akin to a forcible rape, although the defendant was only the beneficiary of the force and not the perpetrator of it. Certainly, the record indicates a high degree of culpability, which would authorize a trial judge to exercise discretion to impose substantially more than the minimum sentence.

While the use of a presentence investigation is to be encouraged, it is not a substitute for the demonstrated exercise of independent judicial discretion. In *McCleary, supra,* we found that the presentence investigation itself was misleading and contributed to, if it was not completely responsible for, the judge's improper imposition of sentence. It is thus apparent that the presentence investigation is not the cure-all for the abuse of sentencing discretion.

In the instant case, the facts required for a rational disposition of the case were evident from the record. The judge concluded that the defendant was "a deliberate, bold-faced liar." His appraisal of the defendant in this respect was confirmed by the defendant's admissions at the time of the postconviction motions.

In *McCleary, supra,* this court adopted Standard 2.3 (c) of the American Bar Association *Standards Relating to Appellate Review of Sentences.* That standard provides that a sentencing judge should state the reasons for imposition of sentence. One of the most frequent criticisms of appellate courts' attempts to review sentences is that the record pages do not reflect the trial judge's impressions of the demeanor of the defendant. *See* Brewster, *Appellate Review of Sentences* (1965), 40 F. R. D. 79, 85, 86.

The appellate review of sentencing discretion is facilitated where, as here, the trial judge states for the record his impressions of the defendant's demeanor which provided the foundation for the exercise of his sentencing discretion.

The trial judge's characterization of the defendant as "sarcastic," "a deliberate, bold-faced liar," and "a wise smart alec," is the verbalization of the trial judge's impressions of the defendant's demeanor and is of assistance to this court in reviewing the sentence and of value to correction officials in prescribing appropriate rehabilitative treatment. They indicate that the defend-

ant's attitude gave the judge the impression that a protracted period of custodial rehabilitation was required.

A trial judge cannot impose his conscience upon others unless the exercise of his conscience is guided by proper legal principles and the exercise of demonstrated judicial discretion. Nevertheless, as stated by Judge Richard Robinson:

"The court is the primary agency through which society expresses its disapproval of given acts of misconduct. The function of the sentence in symbolizing that disapproval should be fully underscored by the court for both the benefit of the defendant and other potential offenders in the community." Robinson, *The Defendant Needs to Know*, 26 Federal Probation, December 1962, pages 3, 4.

We cannot conclude that the trial judge's remarks are, as defendant contends, evidence of an "irrational emotionalism" inconsistent with the exercise of judicial discretion. We therefore decline to set aside the sentence on the *McCleary* grounds that there was evidence of an abuse of discretion.

We should point out, however, that the pronouncement of the sentence is useful not only in expressing society's disapproval of the act, but also, if properly imposed, can be of therapeutic value in the rehabilitative process. Robinson, *supra,* page 5, quotes James V. Bennett, former director of the Bureau of Prisons, as stating:

"The courts can help to minimize our prison problems by the very manner in which they impose sentence. It is, of course, the court's duty to define for the defendant the community's attitude toward his act, and that is partly the function of the sentence. But this can be done in an objective, constructive way, and it may actually put the defendant in a frame of mind where he might be more inclined to cooperate with the corrective efforts of those to whom the court has delegated this duty. On the other hand the manner in which the court passes sentence can have the opposite effect. If the court creates unnecessary

antagonisms in the defendant by heaping invective upon him, ridiculing and humiliating him, it may impose very formidable handicaps to the probation officer or the prison personnel who must thereafter try to instill within the defendant an attitude that he really has within himself the capacity to become a worthy citizen."

The admonitions of James V. Bennett should be heeded in the imposition of a sentence even though the trial judge is convinced that the defendant's conduct is such that the ire of the community is properly aroused. It is perhaps in such cases where the conscience of society is most outraged that the trial courts should exercise the greatest care that rehabilitation will be facilitated and not impeded.

The trial judge in this case exercised his sentencing discretion on the basis of the facts of record and with full consideration that the nature of the particular crime required a substantial sentence. The sentence imposed was not as a result of the abuse of discretion.

Defendant also argues that other participants in this very crime either went unpunished or received substantially lesser sentences. The record is clear, however, that the defendant herein was the only one of the individuals involved who was not of an age to be charged initially in the juvenile court. Furthermore, it was admitted that he had been convicted not only of juvenile offenses but of adult crimes.

This court has often said that the mere disparity of sentences between persons convicted of similar crimes does not establish a denial of the equal protection of the law. *Price v. State* (1967), 37 Wis. 2d 117, 154 N. W. 2d 222; *Jung v. State* (1966), 32 Wis. 2d 541, 145 N. W. 2d 684.

In *McCleary, supra,* we pointed out that the empirical guide to sentencing, which is the essence of judicial discretion, will inevitably result in wide deviations from one sentence imposition to another.

The defendant would rely on the cases of *United States v. Wiley* (7th Cir. 1959), 267 Fed. 2d 453, and (7th Cir. 1960), 278 Fed. 2d 500, wherein the court of appeals twice reversed a district judge's sentence on the grounds that Wiley had received a harsher sentence than the principal participants in the crime. However, in *Wiley*, it was clear that the defendant was penalized because he exercised his right of trial and in *Wiley*, unlike the instant case, the trial judge stated that he categorically refused to consider probation in any case where a defendant, after refusing to plead guilty, was found guilty after trial.

There is nothing in the record to show that any disparity in the treatment of the defendant and others involved in the incident was arbitrary or based on considerations not pertinent to proper sentencing discretion.

The defendant also claims that he was improperly convicted because other defendants involved in the same incident were given the opportunity to plead guilty to lesser charges. It is clear, however, and the defendant so admitted at the postconviction hearing, that prior to the trial and throughout the proceedings he insisted upon his innocence and never admitted to having sexual intercourse with the child, even to his own attorney. While it is in the interest of the administration of justice and the court system to avoid trials and to accept pleas of guilty in circumstances where it is appropriate to reduce the charges, the defendant can hardly complain when, under the circumstances, he furnished his own attorney with no facts under which the prosecutor could have been asked to consider lesser charges.

The American Bar Association *Standards Relating to the Defense Function* (Tentative Draft, 1970), page 245, sec. 6.1 (b), provides:

"When the lawyer concludes, on the basis of full investigation and study, that under controlling law and the

evidence a conviction is probable, he should so advise the accused and seek his consent to engage in plea discussions with the prosecutor, if such appears desirable."

It would have been inappropriate, in view of his client's assertion of complete innocence, for the defense attorney to have entered into a plea bargain with the prosecutor. The fact that other participants in the same incident entered into plea bargains is not persuasive under the barren state of this record. We are not informed why such defendants agreed to plead guilty or why the district attorney bargained to accept pleas on lesser charges. The record is devoid of any facts which could lead us to conclude that the defendant was denied equal protection of the laws.

*By the Court.*—Judgment and order affirmed.