PEURALA, Plaintiff and Respondent, vs. HURLEY and another, Defendants and Appellants: VAN DEURZEN and another, Interpleaded Defendants and Respondents.

*February 8—March 6, 1951.*

*John R. Cashman* of Manitowoc, for the defendants-appellants.

*Edward Meyer* of Manitowoc, for the plaintiff-respondent.

For the interpleaded defendants-respondents there was a brief by *Nash, Clark, Rankin & Nash* of Manitowoc, and oral argument by *Walter J. Nash.*

FAIRCHILD, J. The jury found that the appellant negligently drove his automobile on a three-lane highway so as to "sideswipe" the car in which the respondent was riding, that this caused that car to leave the highway and overturn in a creek some ten or more feet deep.

The respondent was a young woman twenty-two years of age, and the injuries resulting were concussion, broken

left clavicle which left a visible deformity, a cut on the head, and permanent injury to her jaw, seriously affecting the dense tissue around the joints of the jaw and permitting it to slip out. The medical testimony is that the ligaments surrounding the joint were torn at the point where the jaw fits into the skull; that it will slip out and require manipulation to get it back into place. This manipulation will cause soreness because of the stretching of the muscles. Respondent was in the hospital four days and wore a brace two and one-half months to support her back. Her arm was in a sling for several months. During her period of convalescence she developed a rash, and for six weeks after the accident suffered daily headaches. At the time of the trial she was still suffering pain in the shoulder. In view, therefore, of the respondent's suffering and the permanent nature of her injuries, the amount of damages allowed is not considered excessive.

The appellant attempts to make the point that there was a failure of proof that it was his Oldsmobile which came in contact with the car in which respondent was riding. There is little, if there is any, credible testimony at all on which to base a challenge of the finding of the jury that it was appellant's car that collided with the Van Deurzen car, or that the appellant driver was negligent in that he failed to keep in his lane of traffic or that he failed to keep a proper lookout. The evidence is sufficient to sustain the findings as outlined and to warrant the exonerating from all negligence of the driver of the Van Deurzen car, without giving the serious consideration to the allegations in the cross complaint that they are entitled to under the rules of pleading. The questions submitted were certainly jury questions.

The testimony accepted by the jury as the controlling evidence is that appellant's car struck the Van Deurzen car near the culvert where the hubcap of the Oldsmobile was

found. The evidence is positive that Hurley lost his hubcap there. He admitted to the deputy sheriff that his car was the car that collided with the Van Deurzen car. The traffic officer, Suchomel, testified that he found the hubcap at the scene of the accident.

The testimony of the others who were returning from the basketball game warrants the conclusion that the appellant did not remain at the scene of the accident. It was with relation to and in connection with testimony given by appellant and the young woman who was with him that the questions as to his drinking and as to her associations with him were put by respondents' attorney, and on which the appellant bases his complaint that bias or prejudice was imported into the case and influenced the verdict. Appellant complains that questions addressed to him as to whether he had indulged in intoxicating liquors were improper, but the condition of mind and the state of nerves of one driving a car are relevant and material. There is no harm resulting in answering those questions if the defendant is free from intoxication, and the jury is entitled to be fully advised if he has overindulged in that matter. He also bases his claim of bias or prejudice upon a question addressed to the young woman who was riding with him. The record with relation to that question is as follows: "*Q.* 22 years old. You knew that Mr. Hurley's wife had commenced a divorce action against him on account of your going—" "Mr. Cashman: Just a minute; that is objected to as highly prejudicial, improper, incompetent, irrelevant, immaterial, and I think almost grounds for a mistrial, I ask for it." "Court: I think it is immaterial, oh, I can't see the connection." This witness had attempted to support the claims made by the appellant in his testimony, and under ordinary circumstances her interest in and friendship for the appellant would be a proper subject of inquiry on cross-examination. The appellant was not prejudicially affected by what occurred, and if any error was committed, it was in

his favor, for testimony of this character is not necessarily to be rejected. Bias in common parlance covers all varieties of prejudice; and interest signifies the specific inclination which is apt to be produced by the relation between the witness and the facts at issue in the litigation. This method of examination, controlled by the sound discretion of the trial judge, results from the reason that it is probable that particular conduct and circumstances form the only means practically available for effectively demonstrating the existence of a bias in favor of a party amounting to an influential interest prompting one to see things favorably to one side or the other. It is usually developed on cross-examination. 3 Wigmore, Evidence (3d ed.), p. 499, sec. 949; 5 Jones, Commentaries on Evidence (2d ed. rev.), p. 4592, sec. 2345.

*By the Court.*—Judgment affirmed.