STATE, Respondent, v. ROBBINS, Appellant.

*No. State 149. Argued June 6, 1969.—Decided June 27, 1969.*
(Also reported in 168 N. W. 2d 544.)

For the appellant there was a brief by *Eisenberg, Kletzke & Eisenberg,* attorneys, and *Donald J. Jacquart* of counsel, all of Milwaukee, and oral argument by *Mr. Jacquart.*

For the respondent the cause was argued by *Theodore J. Hodan,* assistant district attorney of Milwaukee county, with whom on the brief were *Robert W. Warren,* attorney general, and *E. Michael McCann,* district attorney.

CONNOR T. HANSEN, J. Three issues are presented on this appeal.

## I.

*Did the trial court err in denying defendant's motion to dismiss upon the close of the state's case in chief?*

This issue is not properly before this court because the defense put in evidence and thereby waived its motion to dismiss.

" '. . . It has generally been held when a court has the power to direct an acquittal or dismissal of a charge against the accused and has refused to direct a verdict of acquittal at the close of the prosecution's case, the introduction of evidence by the defendant, if the entire evidence is sufficient to sustain a conviction, waives the motion to direct. . . .' " *Strait v. State* (1969), 41 Wis. 2d 552, 558, 164 N. W. 2d 505; *State v. Wickstrom* (1961), 14 Wis. 2d 416, 419, 420, 111 N. W. 2d 176.

However, the question remains whether there is sufficient credible evidence to support the jury's verdict.

## II.

### Credible evidence.

The defendant's principal contention is that the state did not establish the requisite criminal intent to sustain the defendant's conviction under sec. 943.23, Stats.

"On appeal in a criminal case the test of the sufficiency of the evidence for a conviction is whether the evidence

adduced, believed and rationally considered by the jury was sufficient to prove defendant's guilt beyond a reasonable doubt. . . ." *Jensen v. State* (1967), 36 Wis. 2d 598, 607, 153 N. W. 2d 566, 154 N. W. 2d 769.

". . . Stating the rule conversely for the sake of clarity, the evidence when considered most favorably to the state and the conviction must be so insufficient in probative value and force that it can be said as a matter of law that no trier of the facts acting reasonably could be convinced to that degree of certitude which the law defines as 'beyond a reasonable doubt.' " *Lock v. State* (1966), 31 Wis. 2d 110, 115, 142 N. W. 2d 183.

The record reveals the following facts. On April 1, 1968, a 1966 red Chevrolet automobile with oversized rear tires and owned by William Suprenand was stolen while it had been parked at a ten-hour parking meter on 29th and Townsend streets in Milwaukee.

The original taker of Suprenand's red Chevrolet was not the defendant, as the defendant was incarcerated in the Milwaukee County House of Correction on April 1, 1968.

The statutory language "Whoever intentionally takes and drives any vehicle without the consent of the owner . . .", sec. 943.23, Stats., does not mean that the driver at the time of the apprehension has to be the person who actually took the vehicle from the rightful owner.

On April 10, 1968, Raymond Zachow, a Milwaukee police officer, observed the defendant driving Suprenand's car. The defendant later admitted driving the car and it is conceded that he did not have Suprenand's consent. Thus the only element in controversy was the defendant's criminal intent.

Officer Zachow testified that while patrolling his beat at about 5:30 p. m. on April 10, 1968, he observed the defendant walk out of a house at 2501 West Auer avenue, Milwaukee, and enter a red 1966 Chevrolet bearing license number B-35123, with oversized tires on the rear of the automobile. At this time Zachow did not know the car had been reported stolen.

The defendant was wearing a white shirt and dark pants with a medallion around his neck. The defendant drove the automobile past Zachow at a rate of speed in excess of 35 miles per hour. Zachow, in an apparent attempt to give the driver a speeding citation, stepped into the road and attempted to flag down the defendant with his hands as the automobile approached. However, the defendant did not stop.

Zachow immediately walked to the house at 2501 West Auer avenue to ascertain the name of the driver of the vehicle. While at the house he talked to one of the residents, Donald Jett. Jett told Zachow that the driver of the Chevrolet was William Parker (a/k/a Malibu Slim) of 2332 North 15th street.

Subsequently, Zachow attempted to locate Parker by checking with the telephone company and the city directory, but he was never able to find Parker. A squad car was dispatched to 2332 North 15th street and found that there was no such address. The defendant testified that he had not met Parker prior to April 10, 1968, and that he had never seen him after that date.

Ten minutes later, as Zachow was leaving the Auer avenue address, he observed a man who he thought was the defendant walk past him and disappear into the house. As he was not absolutely sure that the man who walked past him into the house was the driver of the red Chevrolet, and since the violation was not a serious one, he left the house without pursuing the defendant.

A few moments later, Zachow received instructions via his walkie-talkie to proceed to 2717 West Concordia to investigate a suspicious auto complaint. There he observed the same red Chevrolet the defendant had driven past him on Auer avenue about fifteen minutes earlier parked at the curb. However, the license plates had been removed. The automobile turned out to be Suprenand's and it was turned over to him.

The address of 2501 West Auer avenue is about six or seven blocks from 29th and Townsend and four blocks

from 2717 West Concordia. The Concordia address is about three blocks from 29th and Townsend.

Elmer Mann resided at the Concordia address on April 10, 1968. He testified that shortly after 5:30 p. m. he was looking out the window of his home and observed a man getting out of an automobile across the street. Mann was unable to identify this person but stated that he was wearing a jacket, a white shirt, and dark trousers.

Mann could only see the front of the car and observed the man walk to the rear of the car and then return to the front of the car carrying a license plate. At the front of the car the man knelt down and removed the front license plate. The man then put both plates under his arm and walked off. Mann then reported the incident to the police. When Zachow arrived, Mann pointed out the vehicle in question.

About 9:10 p. m. on the same evening, Zachow observed and stopped a Thunderbird automobile, in the same general area as the Townsend, Auer and Concordia addresses, bearing the license number he had earlier observed on the red 1966 Chevrolet. The license plates had been issued to the driver and owner of the Thunderbird, Donald Jett. The defendant was a passenger in the rear seat of the Thunderbird.

Zachow testified that he advised the defendant he had been seen earlier driving a *stolen* automobile, and the defendant denied that he had been operating the red Chevrolet at about 5:30 p. m. when Zachow attempted to flag it down. The defendant claims that as soon as Zachow mentioned that the car was stolen he admitted driving it earlier, but denied knowing that it was stolen. Zachow testified that the defendant did not admit to driving the red Chevrolet until the next day.

The defendant testified that he first learned of the existence of the red Chevrolet at about 5 p. m. on April 10, 1968, as he was preparing to leave the house on Auer avenue to go to a store to purchase a carton of cigarettes. Before leaving the house he inquired of the other resi-

dents of the house, Michael Thomas and James Russell, who belonged to the red Chevrolet parked in front of the house. Russell said it belonged to William Parker (Malibu Slim). Parker was allegedly in the house with the defendant and asked the defendant if he wanted to try the car out. The defendant claims that Parker then turned the keys over to him and he drove off.

He admitted seeing a policeman trying to flag him down but he did not stop "because I figured he was going to give me a speeding ticket and a ticket for a loud muffler." The defendant then proceeded to the store and parked the car in the 2700 block of Concordia. He denied removing the license plates from the red Chevrolet. He did admit that he was wearing a white shirt and that Parker was dressed entirely in brown.

The defendant stated that after he left the store he decided not to return the car for fear of running into the police officer who had attempted to flag him down. As he began walking he happened to run into Parker about a block and a half from the Auer avenue house, though he had previously indicated to Parker that he would return the car to the house. He claims he gave Parker the keys and told him what had happened.

In *Strait v. State, supra,* 559, 560, this court made the following statements concerning criminal intent:

" 'Intent is a state of mind existing at the time a person commits an offense. If intent required definite and substantive proof, it would be almost impossible to convict, absent facts disclosing a culmination of the intent. The mind of an alleged offender, however, may be read from his acts, conduct, and inferences fairly deducible from all the circumstances.' 13 Am. Jur. 2d, *Burglary,* p. 352, sec. 52.

" 'The type of reasonable certitude required in criminal cases is moral certainty relating to the affairs of human conduct and grows out of informed experience with the common ways (mores) of man. It is based upon the certain constancy and uniformity in the free conduct of humans under given conditions or motives. Based upon long experience with the actions and motives of human

nature, certain inferences of conduct may be drawn from various circumstances to a moral certainty. This is not to say that exceptions and possibilities may not exist but such possibilities in themselves do not prevent a person from forming a reasonable conviction beyond a reasonable doubt or to a moral certainty of the truth of a fact. This degree of certainty required to sustain a criminal conviction may be attained upon circumstantial evidence as well as upon direct evidence.' *State v. Johnson* (1960), 11 Wis. 2d 130, 136, 104 N. W. 2d 379."

We are of the opinion that the circumstances as revealed by the evidence, which can be accepted as credible, and the inferences to be drawn therefrom, are sufficient to allow the jury, acting reasonably, to be convinced beyond a reasonable doubt that the defendant did intentionally take and drive the vehicle without the consent of the owner. A summary of evidence that supports the findings is as follows:

1. There is substantial credible evidence from which the jury could believe that the defendant removed the license plates from the stolen automobile immediately after Officer Zachow attempted to flag him down. The defendant admitted parking the red Chevrolet in the 2700 block of Concordia at the time in question, and he fit the description of the man whom Mr. Mann witnessed getting out of the car and removing the plates. There is no other reasonable explanation of how the license plates were removed.

2. The defendant did not stop for Officer Zachow, though he saw Zachow, when he was attempting to flag him down.

3. Donald Jett told Zachow that the driver of the car was William Parker of 2332 North 15th street. There is no 2332 North 15th street; Parker was never found; and the defendant admitted that it was he who was driving the red Chevrolet at 5:30 p. m. on April 10, 1968.

4. The defendant alleges that Parker claimed to be the owner of the car and gave him permission to drive it. Parker was not produced at the trial and the police never

located him. Furthermore, the defendant did not return the car to the Auer avenue address as he had promised, but left it four blocks away on Concordia street and happened to run into Parker a block and a half from the house and allegedly returned the keys to Parker.

5. The defendant testified that when he was arrested on the evening of April 10, he told the officer he had not driven the red Chevrolet earlier that day, but that as soon as the officer informed him the car was stolen he admitted to driving it earlier in the day.

6. Zachow testified that he informed the defendant upon his arrest that the car was stolen and that the defendant did not admit to driving the car until the next day.

7. Since the defendant had told Zachow he had received the vehicle from a friend of James Russell's, a William Parker, Zachow questioned Russell. Russell's stories were conflicting—one claiming he did not know how the defendant got the car, and the other claiming Parker had given the car to the defendant.

8. The license plates on the Thunderbird automobile which belonged to Donald Jett, who lived with the defendant, were the same as those observed by Zachow when the defendant was driving the red Chevrolet.

### III.

*New trial in the interest of justice.*

In *Lock v. State, supra,* page 118, we stated the rule governing the granting by this court, pursuant to its discretionary power under sec. 251.09, Stats., of a new trial in the interest of justice in a criminal case:

". . . it should clearly appear from the record that for some reason it is probable there has been a miscarriage of justice. In order for this court to exercise its discretion

and for such a probability to exist we would at least have to be convinced that the defendant should not have been found guilty and that justice demands the defendant be given another trial."

Besides arguing that the jury could not properly conclude the defendant's criminal intent from the credible evidence, the defendant contends that a new trial in the interest of justice should be had because the trial judge did not give the following instruction:

"If you believe that the defendant, Wiley F. Robbins, thought he had permission of the true owner to drive the automobile, then you must find him not guilty."

Three times the court told the jury that to find the defendant guilty, they must be satisfied "that the defendant knew that such taking and driving was without the owner's consent." The defendant's suggested instruction merely states the corollary of the instruction given.

Furthermore, the defendant concedes that their instruction which "should have been given" was never requested at the trial.

We are convinced that the jury had reasonable grounds upon which to base their decision and that there has been no miscarriage of justice.

*By the Court.*—Judgment and order affirmed.