Freda **THORNTON**, Plaintiff-Respondent,

v.

Waymon Gene **VONALLMON**, Defendant-Appellant,

and

Keith Mesecher, Defendant.

No. 8906.

Springfield Court of Appeals, Missouri.

June 17, 1970.

Stanley A. Grimm, Bradshaw Smith, Rader & Grimm, Cape Girardeau, for defendant-appellant.

Harold L. Henry, West Plains, for plaintiff-respondent.

HOGAN, Judge.

Plaintiff Freda Thornton sustained injuries when the automobile in which she was riding as a passenger left the road and struck an embankment. She instituted this action to recover damages for her injuries against defendant Vonallmon, who was driving the automobile, and defendant Mesecher, who owned it, but dismissed the action as to Mesecher. Plaintiff has had a verdict and judgment in the sum of $10,-000, and the defendant appeals. The assignments of error are that the trial court unduly limited defendant's cross-examination of witness P. D. Baker, Jr., that the court erred in refusing to discharge the jury because of plaintiff's improper argument to the jury, and that plaintiff's verdict-directing instruction was prejudicially erroneous. No claim is made that the verdict is excessive.

Plaintiff's evidence was that on February 17, 1968, she went to a tavern near West Plains, Missouri, went to the bar, and ordered a glass of beer. Shortly thereafter, Baker came in the tavern, joined the plaintiff, and the two drank beer, talked, and played shuffleboard. While they were there, defendant Vonallmon arrived and "sat down at the far end of the bar." Inferably, at least, the plaintiff, Baker and Vonallmon remained at the tavern for some time drinking beer, talking, and playing the "shuffleboard" and pinball machine. Vonallmon left and returned with a late model sports car. Then, according to Baker, Vonallmon "wanted to take me for a ride * * * I said I didn't care nothing about going [but] he talked me into it and I asked him what was the capabilities of *it's* speed and he said a hundred and forty miles an hour." Baker asked if the defendant intended to drive the automobile "like that," and Vonallmon promised he wouldn't "do over forty-five miles an hour." Baker asked the plaintiff to go along. Plaintiff was hesitant, but Vonallmon promised her "he wouldn't go over thirty-five so we got in the car."

Defendant then drove north to a roadside park. He stopped there to let Baker drive the automobile. Baker turned the automobile around and drove south a short distance, but then, according to Baker, "Gene [Vonallmon] wanted the wheel back and I tried to talk him out of it [but] it was his car * * * [a]nd I just got out and let him drive." Vonallmon drove carefully for about a mile and then began to drive very fast. Plaintiff testified that she looked at the speedometer and she knew "it was a hundred and twenty and it was some over that and I couldn't tell you how much more." Baker could also see the speedometer, and his testimony was that Vonallmon was driving "[b]etween a hundred and fifteen and a hundred and twenty mile an hour." Both plaintiff and Baker asked

Vonallmon to slow down, but he did not respond. "Maybe thirty seconds" afterward, defendant lost control of the vehicle, it left the road and ran into the bank on the left side.

Mr. Vonallmon was unable to recall having said that the automobile would go a hundred and forty miles an hour, and he testified that he "never said" that he would drive slowly. His evidence was that he had offered to take Mrs. Thornton and Baker "for a ride," and they had accepted. Defendant testified that he drove "up to the roadside park," and then "[a] mile, half a mile down [south] on the by-pass." Baker then drove the car for some distance, and defendant "took back over" and drove south on Highway 160. The automobile, according to defendant, "went to going off the shoulder * * * on the right hand side," and the steering mechanism did not respond when he attempted to turn. Baker said "get it over," defendant answered, "I can't," and the automobile "hit the bank about that time." Defendant said he had had no previous difficulty with the steering mechanism, and he denied that either plaintiff or Baker had asked him to reduce his speed.

The record events to which our attention is called occurred when the defendant attempted to cross-examine Baker concerning his relationship with the plaintiff. Baker was asked how long he had known the plaintiff, and he replied, "Approximately three years." Counsel then asked, "How long have you been going with her?" Plaintiff's counsel objected, not to the form of the question, but on the ground that the inquiry was "immaterial." The objection was sustained. Counsel for the defendant then asked to approach the bench and explained that he proposed to ask Baker about his relationship with Mrs. Thornton so the jury might consider Baker's bias and interest in the outcome of the suit. Again plaintiff objected on the ground that "it would be immaterial," and the court stated, "It'll be sustained." Defendant then asked to make an offer of proof and, outside the hearing of the jury, this discussion followed:

"THE COURT: Very well, gentlemen. Make your record.

MR. GRIMM: Your Honor, at this time and out of the hearing of the jury, in support of my question which pertained to how long he had been dating Mrs. Thornton, I offer for the purpose of establishing the interest of this witness in the outcome of this suit for the purpose also of establishing the relationship that exists between this witness and to Mrs. Thornton. And also for the purpose of establishing the inclination of this witness to speak truthfully or not and the probability or improbability of the witnesses statements to prove that this witness has regularly, for some period of time, both before this accident and since this accident, dated the plaintiff, Freda Thornton.

I further offer to prove that he has had dates with Freda Thornton. I further offer to prove that within the last month he has had dates with Freda Thornton. I further offer to prove that for a period from February of this year until the present time, he has had dates and relations with Mrs. Thornton and all these offers are made for the reasons previously indicated.

THE COURT: Now, Mr. Henry, it's your lawsuit. Do you still object?

MR. HENRY: I'm trying to think whether or not it'll be error.

THE COURT: The Court doesn't know. But I'll say this gentlemen, if we're going to go into the phase of all the witnesses and their associations in this lawsuit, there'll be no end to it. The Court will sustain it unless you ask me to let it in, with the understanding that if I'm in error, I will grant a new trial. Frankly, I don't know.

MR. HENRY: I personally think that it's immaterial here and I'm going to object for that reason.

THE COURT: It'll be sustained. Bring in the jury.

MR. GRIMM: Thank you, Your Honor.

MR. GRIMM: Just a question before we go on. Do I understand the Court's ruling would not—would prohibit me to inquire about any relation that took place on that particular date?

THE COURT: No, I'm not prohibiting you from doing that. Just on the dating.

MR. GRIMM: Right."

As briefed, the appellant's first point is that he should have been permitted to cross-examine Baker concerning his interest, relationship and state of feelings toward the plaintiff. He argues that his proposed line of inquiry is authorized by § 491.010, RSMo 1959, V.A.M.S. and, citing such cases as State v. Pigques, Mo., 310 S.W.2d 942, Houfburg v. Kansas City Stock Yards Co. of Maine, Mo., 283 S.W.2d 539, and Rogers v. St. Avit, Mo.App., 60 S.W.2d 698, maintains that the interest or bias of a witness and his relation to or feeling toward a party may always be shown and considered as bearing upon the credit which should be accorded the witness' testimony. The plaintiff counters this point with the argument that § 491.010 does permit the interest of a witness to be shown, but does not nullify the general rule so as to permit the introduction of evidence which is otherwise inadmissible nor alter the rule that the trial court may, in its discretion, limit the extent of cross-examination. In presenting these arguments, the parties have thoroughly mixed several different legal principles, but for the limited purposes of this opinion it is unnecessary to distinguish and discuss them all. Essentially, the question presented is whether or not the defendant's inquiry into Baker's relationship with and feeling toward the plaintiff was unduly limited by the trial court.

The general rule of law applicable here is stated in the cases cited by the appellant, which we paraphrase rather than quote. They hold that a witness' interest in the result of an action, civil or criminal, in the trial he testifies, or his bias or prejudice in favor of or against any of the parties thereto, is proper to. be shown for consideration by the jury as bearing on the credit which should be given to his testimony. The facts or circumstances showing the interest or bias of a witness and his relation to or feeling toward a party are not irrelevant or immaterial matters, even though they have no evidentiary bearing on the issues tendered by the pleadings. Moreover, where interest or bias is denied by the witness it may be shown by the testimony of others, and even when it is admitted the extent of the witness' bias and prejudice may be shown, though the trial court has considerable discretion as to how far the inquiry may be pursued in detail. State v. Pigques, supra, 310 S.W.2d at 947 [7, 8]; Houfburg v. Kansas City Stock Yards Co. of Maine, supra, 283 S.W.2d at 548–549; Rogers v. St. Avit, supra, 60 S.W.2d at 699–700 [1]. The trial court may properly limit the scope and extent of cross-examination into the witness' bias or prejudice, as the respondent contends, but it is not within the trial court's discretion to prevent it entirely. State v. Solven, Mo., 371 S.W.2d 328, 332 [4]; Gurley v. St. Louis Transit Co., Mo.App., 259 S.W. 895, 898 [5–7].

Some of the relationships which may be shown to indicate the favorable bias or partiality of a witness toward the party for whom he testifies are that the witness is a member of the party's family, that he is engaged in business with or is employed by the party, that the witness is friendly with or has had sexual relations with the party for whom he testifies, or that the witness has, by particular conduct or expression, demonstrated friendship, affection or partiality toward the party for whom he is offered as a witness. Barraclough v. Union Pac. R. Co., 331 Mo. 157,

165, 52 S.W.2d 998, 1001–1002 [4]; McCormick, Evidence, § 40, pp. 82–83 (1954); III Wigmore, Evidence, § 949, pp. 499–502 (3rd ed. 1940). In State v. Cole, Mo., 213 S.W. 110, 113, a prosecution for murder, it was held that the bias and partiality of a female witness for the state might be demonstrated by showing that she was friendly with and had had sexual relations with the deceased victim, although the court held that specific instances of unchastity or sexual relations with the deceased might not be shown. Though we are cited to and find no case from our own courts deciding the precise question presented, we have no doubt that in a civil action for damages the existence of past or present sexual relations between a witness and the party for whom he or she was called may be shown as a circumstance tending to affect the credibility of the witness, though specific occasions or particular acts may not be inquired into. Sabowska v. Coney Island & B. R. Co., 174 App.Div. 913, 160 N.Y.S. 386, 387 [1]; Hemler v. Hucony Gas Co., Tex.Civ.App., 18 S.W.2d 942, 944 [5]; Peurala v. Hurley, 258 Wis. 592, 46 N.W. 2d 855, 858–859 [4]; 98 C.J.S. Witnesses § 548, p. 490. See also 1 Greenleaf, Evidence, § 450, pp. 739–740 (Lewis ed. 1899), and Thomas v. David, 7 Car. & P. 350, 173 Eng.Rep. 156, 157.

■ In this case there were only three witnesses who had direct, firsthand knowledge of the facts. Two of these witnesses, plaintiff and Baker, testified that Vonallmon had been drinking, although he was not intoxicated, that he had spoken boastfully of his powerful sports car which would go very fast, that he coaxed them into going for a ride, and finally persuaded them to ride only by promising to drive very carefully, and having got them out on the road proceeded to drive in an almost culpably negligent manner, over their protest. Baker's testimony not only corroborated the plaintiff; he was in fact the more specific and articulate of the two. On the record presented, we are convinced that the trial court should have permitted *some* inquiry into the relationship which existed between Baker and the plaintiff, including a reasonable inquiry into their sexual relations, if any, although we agree that counsel should not be permitted to inquire into specific acts nor show particular instances of illicit sexual relations by the testimony of other witnesses. The denial of any inquiry into Baker's feeling for and relationship with the plaintiff was, in our view, error requiring reversal.

■ The defendant has not, in this court, complained that the verdict is excessive, that the evidence of permanent injury was not substantial, or that the instruction given on the measure of damages was erroneous or without evidentiary support. He does complain of improper argument, but not in connection with the amount awarded as damages. Rule 83.13(c), V.A. M.R., provides that no new trial shall be ordered as to issues in which no error appears, and inasmuch as no claim of error is made in connection with the issue of damages, that issue need not be retried. Beckwith v. Standard Oil Company, Mo., 281 S.W.2d 852, 857 [11]; Jokisch v. Life and Casualty Ins. Co. of Tenn., Mo.App., 424 S.W.2d 111, 117 [11]; Grissom v. Handley, Mo.App., 410 S.W.2d 681, 691 [21]. The judgment is reversed and the cause is remanded for a new trial on the issue of liability only. If upon retrial the verdict be for the plaintiff, the trial court shall enter judgment for her in the sum of $10,000 against the defendant.

TITUS, P. J., and STONE, J., concur.