STATE, Respondent, v. BERGENTHAL, Appellant.*

*No. State 24.   Argued June 3, 1970.——Decided June 26, 1970.*
(Also reported in 178 N. W. 2d 16.)

* Motion for rehearing denied, without costs, on September 1, 1970.

670

For the appellant there was a brief by *Roland J. Steinle, Jr., Robert E. Hackett, Jr.,* and *Gerald P. Boyle,* all of Milwaukee, and oral argument by *Mr. Steinle* and *Mr. Boyle.*

For the respondent the cause was argued by *Michael Ash,* assistant district attorney of Milwaukee county, with whom on the brief were *Robert W. Warren,* attorney general, and *E. Michael McCann,* district attorney.

ROBERT W. HANSEN, J.   On motions after verdict, one hundred claims of error were asserted in the trial court. In a motion before this court to stay execution of the sentence, defendant's counsel asserted that ninety-nine survived to be raised on this appeal. Those not commented upon in this opinion were considered and found

to be repetitious, without merit or without significant effect upon the verdict and judgment reached.

Charged with first-degree murder and attempted murder, the defendant entered pleas of not guilty, and not guilty by reason of insanity. So a bifurcated trial was held. As the trial was divided, so will be this opinion, dealing first with the phase of the trial related to guilt or innocence per se.

### Trial as to guilt.

The guilt phase of the trial lasted twelve days, and included six night sessions. Over thirty witnesses took the stand, and over one hundred exhibits were introduced into evidence. As to the jury verdict finding the defendant guilty of first-degree murder and endangering safety by conduct regardless of life, the defendant makes the following significant claims of error.

### Submission of lesser offenses.

Defendant claims it was prejudicial error for the trial court to refuse to submit to the jury alternatives of second-degree murder, homicide by reckless conduct, and reckless use of a weapon. Multiple verdicts are to be submitted to the jury when there is a reasonable basis in the evidence for a conviction of either the greater or the lesser offense. The rationale of the rule has been stated by this court as follows:

". . . if the evidence, in one reasonable view, would suffice to prove guilt of the higher degree beyond a reasonable doubt, and if, under a different, but reasonable view, the evidence would suffice to prove guilt of the lower degree beyond a reasonable doubt, but leave a reasonable doubt as to some element included in the higher degree but not in the lower, the court should, if requested, submit the lower degree as well as the higher. . . ." [1]

[1] *Zenou v. State* (1958), 4 Wis. 2d 655, 668, 91 N. W. 2d 208. *See also: Brook v. State* (1963), 21 Wis. 2d 32, 40, 123 N. W. 2d 535; *Weston v. State* (1965), 28 Wis. 2d 136, 135 N. W. 2d 820;

The key word in the rule is "reasonable." The rule does not suggest some near automatic inclusion of all lesser but included offenses as additional options to a jury. Only if "under a different, but reasonable view," the evidence is sufficient to establish guilt of the lower degree and also leave a reasonable doubt as to some particular element included in the higher degree but not the lower, should the lesser crime also be submitted to the jury. However, there is not to be read into the rule the requirement that "there are not reasonable grounds on the evidence to convict of the greater offense." [2] That goes too far. Where the defendant is able to demonstrate that there is no reasonable view of the evidence that warrants conviction on the greater offense, and the trial court agrees, there remains no issue on such charge to go to the jury. The purpose of multiple verdicts is to cover situations where under different, but reasonable, views of the evidence there are grounds either for conviction of the greater or of the lesser offense. The lesser degree verdict is not to be submitted to the jury unless there exists reasonable grounds for conviction of the lesser offense and acquittal on the greater.

On the challenge to the form of the verdict, the dispute here revolves around the requirement that for first-degree murder the state must prove that the defendant had ". . . the mental purpose to take the life of another human being." [3] The defendant argues that there is evidence in the record to give credence to the theory that a struggle took place between defendant and Russell Wirth, the victim, before the fatal shooting. Powder burns on a couch, the path of the bullet and statements of the defendant make up such evidentiary support for the

Bosket v. State (1966), 31 Wis. 2d 586, 143 N. W. 2d 553; Green v. State (1968), 38 Wis. 2d 361, 156 N. W. 2d 477.

[2] Commodore v. State (1967), 33 Wis. 2d 373, 382, 147 N. W. 2d 283; cited with approval in State v. Carter (1969), 44 Wis. 2d 151, 156, 170 N. W. 2d 681.

[3] Sec. 940.01 (2), Stats.

theory of a struggle. However, a review of the evidence on the issue of intent leads us to conclude, as did the trial court, that there is no reasonable basis for finding that the defendant lacked the intent to murder Russell Wirth. The defendant had purchased a gun three weeks earlier; the defendant had told a family friend that he was going to kill Russell Wirth; the victim's wife saw the defendant holding the gun to Russell Wirth's chest, and heard the defendant state, "You are not going to live"; the defendant admitted holding the gun at Russell Wirth's chest; the defendant admitting saying to Russell Wirth, "I am going to have to shoot you"; the defendant admitted shooting Russell Wirth. The defendant's testimony indicates that any struggle which took place occurred after the first shot was fired. The defendant confessed to the murder a number of times; he told a priest in San Diego he would kill Russell Wirth again; he told San Diego police the grievances which he held against Russell Wirth and stated that they were the reasons for shooting him. The trial court concluded: "There was in the court's opinion no evidence presented which would provide reasonable grounds for conviction of a lesser degree and thus have justified the submission of a lesser degree of homicide. . . ." We reach the same conclusion.

*Impeachment of widow.*

The defendant argues that the trial court unduly restricted the impeachment of Mary Wirth, the widow of the victim and the person wounded by the defendant. The widow had testified that she did not know if she had refused to speak to police officers concerning the shootings until she had spoken to her attorney. The trial court barred an attempt, on cross-examination, to impeach this testimony. However, Police Officer Wroblewski did testify that Mary Wirth had declined to answer questions until she had spoken with her attorney. For what it was worth, this fact was presented to the jury.

The defendant also argues that the trial court ruled immaterial a defense question concerning Mary Wirth's feelings toward the defendant. Admittedly it is proper cross-examination to show bias on the part of a witness to a party in a lawsuit.[4] This is true in both civil [5] and criminal cases.[6] The extent of such inquiry into bias is a matter within the discretion of the trial court.[7] Here it was not in dispute that the witness was the widow of the man that defendant had shot and killed, and that she had been shot by the defendant. As one court said in a somewhat similar situation, "The answer to the question was obvious . . . ." [8] To establish that the witness had less than kindly feelings toward the man who had killed her husband and shot her would have been to tell the jury what it already knew. If she had attained the saintlike compassion with which Mahatma Gandhi forgave his assassin, the effect of such rare deviation from the usual attitude would have been to strengthen, not weaken, the impact of her testimony upon the jury. If error there was, and we do not so find, it was harmless.

*Counsel for kin.*

Objection is made to the trial court's rulings in regard to questioning concerning the retaining of counsel by children of the victim. On cross-examination Mary Wirth testified that she did not hire an attorney to assist

---

[4] "The interest or bias of a witness may be shown and considered as bearing on the credit which should be accorded to his testimony." 98 C. J. S., *Witnesses,* p. 476, sec. 539. *See also:* 58 Am. Jur., *Witnesses,* p. 386, sec. 715.

[5] *Peurala v. Hurley* (1951), 258 Wis. 592, 599, 46 N. W. 2d 855.

[6] *State v. Harling* (1969), 44 Wis. 2d 266, 170 N. W. 2d 720.

[7] "The extent of inquiry as to the interest or bias of a witness rests in the discretion of the trial court." 98 C. J. S., *Witnesses,* p. 495, sec. 556. *See also: Peurala v. Hurley, supra.*

[8] *State v. Myers* (1951), 7 N. J. 465, 81 Atl. 2d 710, 720, where the sister of the deceased was precluded from answering a like question.

in the case; that her children did contact a Milwaukee attorney to find out what their rights were; that her sons had spoken about retaining an attorney, and that she had stated that she would work within the system. Questions concerning what occurred between the attorney consulted and her sons were objected to, and the objections properly sustained. A subpoena was served upon the attorney consulted, Attorney James Shellow. On his motion, the trial court quashed the subpoena, and properly so, on the ground that any questions asked would have concerned privileged communications. We find no improper restrictions placed on the defense by the trial court.

*Statement and confession.*

A *Goodchild*-type hearing was held on the issue of the admissibility of statements made by defendant to a taxicab driver who drove him from Los Angeles to San Diego, a priest in San Diego and San Diego police officers. The clergyman was asked his impressions of the defendant's condition at the time of the statement. Objection to such question was sustained. The issue at the *Goodchild* hearing before the court was the voluntariness of the statements made. The hearing deals solely with the issue of the voluntariness of the confession, and the jury is to decide the weight and credibility to be given to the confession.[9] It is clear that the statements made to the priest were volunteered. The defendant was not in custody. The question which the defense counsel asked goes to the trustworthiness of the statements made, not to their voluntariness, and, as this court has said:

"The question of voluntariness is, of course, not directed to the trustworthiness of the statement and whether the

[9] *State ex rel. Goodchild v. Burke* (1965), 27 Wis. 2d 244, 262, 133 N. W. 2d 753; *See also: State v. Miller* (1967), 35 Wis. 2d 454, 465, 151 N. W. 2d 157.

statement is true and credible, but rather whether it was obtained under such circumstances that it represents the uncoerced, free will of the declarant . . . ." [10]

Whether the defendant was drunk, or not in full possession of his faculties, relates more to the weight or trustworthiness of the statements made by the defendant to the clergyman, not to the voluntariness which was the sole issue at the hearing on admissibility. [11]

Defendant also argues that the in-custody confession given by defendant to the San Diego police did not meet the *Miranda* standards. [12] Following the *Goodchild* hearing, the trial court found that the defendant was properly informed of his rights. Such finding is not to be set aside unless contrary to the great weight and clear preponderance of the evidence. [13] Here the testimony of the police officers was that the defendant was informed of his rights. The defendant testified that he could not remember being so informed. The finding of the trial court as to admissibility is clearly supported by the evidence.

*Participation of court.*

Complaint is made that the trial court unduly participated in the examination of witnesses. We find no

[10] *Roney v. State* (1969), 44 Wis. 2d 522, 532, 533, 171 N. W. 2d 400.

[11] "The admissibility or voluntary character of a confession is not affected by the fact that the accused was not in full possession of his faculties at the time his confession was made, although such circumstance is to be taken into consideration by the jury in weighing the evidence. . . ." 29 Am. Jur. 2d, *Evidence*, p. 633, sec. 575.

[12] *Miranda v. Arizona* (1966), 384 U. S. 436, 86 Sup. Ct. 1602, 16 L. Ed. 2d 694.

[13] *State v. Herrington* (1969), 41 Wis. 2d 757, 771, 165 N. W. 2d 120. *Roney v. State, supra,* 44 Wis. 2d at page 534.

foundation for such complaint. Of the incidents cited in defendant's brief, three occurred outside the presence of the jury, two during the *Goodchild* hearing. The only incident in the presence of the jury appears to involve certain questions put by the court to a defense witness concerning an exhibit. This court has stated:

". . . a trial court may question a witness called by the parties in order to clarify received testimony, providing the court does not overtly express his view of the matters in issue. While the court cannot function as a partisan, it may take necessary steps to aid in the discovery of truth. . . ." [14]

Given the length of this trial, the participation complained of was less than might be expected and no more than was reasonably required under the circumstances.

*Witnesses not called.*

The defendant assigns as error the refusal of the trial court to give the so-called absent witness instruction, arguing that the failure of the state to call a number of police officers raises the inference that their testimony would have been adverse to the prosecution. In the first place, the policemen not called by the state were called as witnesses by the defense. In the second place, much of their testimony was cumulative, explaining why they had not been called by the prosecution as witnesses.

*Cover on the couch.*

Powder burns on the cover of the couch on which the defendant and the murder victim were seated figured in the trial. During the second week of the trial, the defense made a motion, pursuant to sec. 165.04, Stats., to have

[14] *State v. Nutley* (1964), 24 Wis. 2d 527, 562, 129 N. W. 2d 155. *See also: Flowers v. State* (1969), 43 Wis. 2d 352, 365, 168 N. W. 2d 843; *Lemerond v. State* (1969), 44 Wis. 2d 158, 164, 170 N. W. 2d 700.

the couch cover examined by the state crime laboratory. The motion was denied as untimely. Untimely it was, since the defense had known of the powder burn on the couch cover during the preliminary examination.

A similar mid-trial motion was made to have a defense expert remove the couch cover from evidence for analysis. Denial was based on untimeliness and avoiding undue delay. The witness did examine the couch cover while on the stand and did testify that the smudges on it were powder burns and were the result of a gun being fired in close proximity, probably from a distance of three to five inches. The expert was able to testify, based on his courtroom examination of the couch cover, as to the nature of the smudges and the position of the gun when fired. We find no error and no prejudice to the defendant in these trial court rulings.

*Conduct of the prosecutor.*

The defendant registers dissatisfaction with the manner in which the district attorney conducted the prosecution. Under the adversary system, and given the outcome of this trial, this is understandable. In this regard it is not easy to separate wheat from chaff. A specific complaint relates to the closing argument of the prosecutor. Considerable latitude is to be allowed counsel in closing arguments, subject only to the rules of propriety and the discretion of the trial court.[15] As to the role of the district attorney in prosecuting criminal cases, it has been well said that: "He may prosecute with earnestness and vigor—indeed, he should do so. But, while he may strike hard blows, he is not at liberty to

[15] "Counsel has great latitude in argument, subject, however, to regulation and control by the court whose duty it is to confine argument within proper bounds." 88 C. J. S., *Trial*, p. 335, sec. 169. *See also:* 53 Am. Jur., *Trial*, p. 363, sec. 460; *Schnick v. State* (1924), 184 Wis. 661, 664, 200 N. W. 303; *O'Neil v. State* (1926), 189 Wis. 259, 263, 207 N. W. 280.

strike foul ones." [16] References to the heinous nature of the crime charged and the weakness of certain defense arguments fall well within the outer limits of the leeway given counsel in this area.

It is true that the district attorney expressed his opinion as to the guilt of the defendant in his closing argument. Such expression of personal opinion is proper only if it is made clear that it was the evidence in the case which convinced him, not sources of information outside of the record.[17] Here the prosecutor's statement came at a point in his closing argument where he was reviewing the evidence. Additionally, objection was made, sustained, and the court stated that the opinion of counsel in the case was not relevant. The district attorney himself thereupon informed the jury to disregard his opinion. If error there was, it was cured. No motion for mistrial was then and there made, and, if it had been, it would or should have been denied.

### Trial as to sanity.

The sanity phase of the trial lasted seven days and included five night sessions. Prior to the trial the defendant filed a written waiver of the provisions of sec. 957.11 (1) and (2), Stats., and elected to be tried under the American Law Institute definition of the defense of insanity.[18] This placed the burden of proof upon the defendant.[19] The defense called nine witnesses to the stand on the issue of sanity. The state called no witnesses. The court had appointed and called to the stand three court-appointed medical expert witnesses to testify on the issue

[16] Berger v. United States (1935), 295 U. S. 78, 88, 55 Sup. Ct. 629, 79 L. Ed. 1314.

[17] Fertig v. State (1898), 100 Wis. 301, 308, 75 N. W. 960; State v. Yancey (1966), 32 Wis. 2d 104, 115, 145 N. W. 2d 145; Embry v. State (1970), 46 Wis. 2d 151, 161, 174 N. W. 2d 521.

[18] State v. Shoffner (1966), 31 Wis. 2d 412, 427, 143 N. W. 2d 458.

[19] Ibid.

of sanity. The jury returned a verdict finding the defendant sane at the time of the commission of the crime.

*Constitutionality of statute.*

The defendant attacks the constitutionality of sec. 957.27, Stats., which allows the appointment of expert witnesses by the court.[20] This court has upheld the constitutional validity of this statute, specifically holding that it does not offend against the privilege against self-incrimination; does not violate the right of trial by an impartial jury; does not impose upon the court a nonjudicial function; and does not invade the province of the district attorney.[21] We hold here, as we held then and there, that:

"Having considered all of the objections raised to the constitutionality of this statute, we arrive, without hesitation, at the conclusion that this statute offends against no constitutional provision, and that its enactment was well within legislative power. . . ." [22]

*Application of statute.*

While the trial court acted in exact compliance with a statute that we have upheld as constitutional, the defendant contends that the application of the statute to the situation here presented deprived him of his right to a fair trial. The reference is to the taking of the testimony of the three court-appointed experts after the defendant had presented his expert witnesses on the issue of insanity, and after the state had rested without putting in evidence on said issue. In discussing this contention, it is helpful to begin with the purpose underlying the appointment of witnesses by trial courts. This court has

---

[20] "(1) . . . Whenever, in any criminal case, expert opinion evidence becomes necessary or desirable the judge of the trial court may after notice to the parties and a hearing, appoint one or more disinterested qualified experts, not exceeding three, to testify at the trial. . . ."

[21] *Jessner v. State* (1930), 202 Wis. 184, 231 N. W. 634.

[22] *Id.* at page 195.

described that primary purpose to be an effort to present to the jury a disinterested, impartial view of the issue involved, the court stating:

". . . Its enactment was in response to a well-settled conviction that, in the criminal cases at least, where the interests of society were involved, there should be some technical evidence from unprejudiced and reliable sources. This conviction grew out of the belief that under the then existing procedure there was a striking tendency on the part of experts to accommodate their opinions to the necessities of that side of the case upon which they were testifying, and that such opinions were to a very large extent prejudiced and unreliable. . . . that there may be some evidence in the case, not bought and paid for, coming from impartial witnesses who owe no duty or allegiance to either side of the controversy, . . ." [23]

There is above expressed a clear recognition that the process of administering criminal justice involves and affects the interests of society as well as the rights of the person accused of committing a crime. While the phrase "search for justice" is not used, it is exactly such search for justice, and for the truth as well, that is sought to be advanced by the legislation authorizing the appointment by the court of expert witnesses not beholden in any way to prosecution or defense. The defendant argues that by allowing the court-appointed witnesses to testify an issue was created as to the sanity of the defendant. That issue was created when the defendant entered his plea of not guilty by reason of insanity. The court-appointed experts gave their opinions on the issue which the defendant raised, as the statute contemplates that they would. To the corollary contention that court-appointed witnesses have, by reason of such appointment, additional weight in the minds of the jury, it is enough to repeat:

". . . Whether the sponsoring of any witness by the court is good public policy is no longer a matter of judicial

[23] *Id.* at pages 186, 187, 193.

opinion. The dominant opinion of the legislature upon that subject has received expression, and its expression upon matters of public policy prevails unless it contravenes constitutional provisions. . . ." [24]

The action of the trial court in allowing the three court-appointed experts to testify did not violate the defendant's right to a fair trial.

*Motion for directed verdict.*

Defendant argues that it was error for the trial court to deny a defense motion labelled "Motion for Directed Verdict," made after the state rested on the insanity issue without presenting additional testimony. This returns to the position that no issue was presented unless the state put on witnesses to testify that the defendant was in fact sane at the time of the commission of the crime. The issue of sanity was raised by defendant's plea. The defendant here had the burden to prove his insanity by the greater weight of the credible evidence. The state did not have the duty to present evidence as to defendant's sanity. The issue as to sanity remained for resolution by the trier of fact. [25] The issue of credibility of witnesses [26] and of whether the defendant had met his burden of proof in establishing the defense of insanity was for the jury to determine. Even without the right of the jury to have and to consider the testimony of the court-appointed doctors, as above sustained, the weight to be given the testimony adduced by the defendant was for the jury to determine. On the record here, direct and cross-examination included, a reasonable juror could

[24] *Id.* at page 193.

[25] "Some courts have held that a conviction may be sustained under the rule requiring defendant to prove his insanity by a preponderance of the evidence even though the prosecution offers no evidence to rebut defendant's evidence of insanity." Annot., 17 A. L. R. 3d 146, 217.

[26] *Zillmer v. Miglautsch* (1967), 35 Wis. 2d 691, 699, 151 N. W. 2d 741; *State v. Christopher* (1969), 44 Wis. 2d 120, 127, 170 N. W. 2d 803.

find the defendant sane at the time of the commission of the crimes without reliance upon the testimony of the court-appointed experts. The question of whether the defendant had met his burden of proof was one of fact for the jury, not one of law for the court.

*Examination by court.*

When the court appoints experts, it is statutorily provided that such fact shall be made known to the jury.[27] Here, at the beginning of each court-appointed expert's testimony, after the qualifications of the witness had been established, the court determined the following information: That the witness had been appointed by the court, that he had subscribed to an oath that he would make a fair and impartial examination to the best of his ability, that he had made a fair and impartial examination. The statute requires that court-appointed experts shall take an oath to conduct a fair and impartial examination.[28] Defendant finds prejudicial error in this procedure. We do not, particularly so because the trial court gave an instruction to the jury, stating that no added weight was to be afforded this testimony because of the court appointment.[29]

In this area of who is to ask preliminary questions, establish qualifications and secure the opinion of a court-appointed expert witness, we see no alternative to the court itself making such inquiries. To delegate such responsibility to either the prosecution or defense would limit the rights of the party selected to cross-examine. Additionally, it would be confusing to the jury. We find no error in the court itself making the initial inquiries, with both parties entitled to cross-examine, the party

[27] ". . . The fact that such expert witnesses have been appointed by the court shall be made known to the jury, . . ." Sec. 957.27 (1), Stats.

[28] *Ibid.*

[29] Wisconsin Standard Jury Instructions—Criminal, Part I, 640.

having the burden of proof to initiate any such cross-examination. As a practical proposition, we see no alternative to such court-conducted initial inquiries that would not blur the status of the neutral witness and defeat, or at least confuse, the purpose sought to be served by the statute authorizing the appointment of such witnesses.

*Alcoholism and insanity.*

The trial court permitted expert witness, Dr. Edward Sheehan, to testify that in his opinion chronic alcoholism was a mental disease and that the defendant was suffering from such disease. The trial court upheld objection to the doctor testifying concerning an "irresistible impulse" to drink. We do not here deal with the question of alcoholism as a substantive defense, negating the element of intent.[30] That would belong in the guilt phase of the trial, not in the phase of insanity. In fact, during the second phase of the trial, defense counsel stated that it was not claimed that chronic alcoholism constituted either a mental disease or insanity. In the second phase of the trial, the issue was not whether the defendant was a compulsive drinker, but rather whether he was sane or insane. Dr. Sheehan testified that the defendant did not lack substantial capacity to conform his conduct to the requirements of law or to appreciate the criminality of his conduct. Under the American Law Institute test, here applicable, the doctor's conclusion was that the defendant was sane. That was the issue, and that was his answer.

As to another examining physician, Dr. Crowley, the defendant finds error in the state not calling him as a witness after he had examined the defendant. On motions after verdict, the district attorney informed the trial court that Dr. Crowley had not formed an opinion

[30] *See: Roberts v. State* (1969), 41 Wis. 2d 537, 164 N. W. 2d 525; *Powell v. Texas* (1968), 392 U. S. 514, 88 Sup. Ct. 2145, 20 L. Ed. 2d 1254.

as to defendant's sanity. The state elected to rest on the sanity issue without putting any witnesses on the witness stand. It had the right to do so. As the state points out, the defendant was examined by twelve doctors hired by him, and only three were called to testify. We see nothing wrong with that result but, if the sword were held to cut at all, it might well cut in both directions.

The defendant alleges that sec. 885.14, Stats., authorized the defense to call Dr. Crowley as an adverse witness. This statute expressly states that it is applicable in civil proceedings and the rule of construction that the inclusion of one implies the exclusion of others makes such statute not applicable to criminal proceedings. The trial court denied a defense motion to permit the defense to call Dr. Crowley as a rebuttal witness solely for the purpose of establishing that he had been hired by the state and to ask how his fee was fixed. Reasserting the trial court's ". . . considerable discretion in controlling the evidence to be admitted in rebuttal," [31] we find no abuse of discretion in the ruling that the proffered evidence was not rebuttal in nature.

*Request for new trial.*

As to both the guilt phase and the sanity phase of the trial, the defendant seeks a new trial both for the cumulative effects of the errors claimed and in the interest of justice. As to the claim of errors, we do not find errors prejudicial to the defendant which, considered individually or added together, require or warrant ordering a new trial. As to whether a new trial should be ordered in the interest of justice, the requirement is that:

". . . it should clearly appear from the record that for some reason it is probable that there has been a miscarriage of justice. In order for this court to exercise its discretion and for such a probability to exist we would

[31] *State v. Watson* (1970), 46 Wis. 2d 492, 499, 175 N. W. 2d 244.

at least have to be convinced that the defendant should not have been found guilty and that justice demands the defendant be given another trial. . . ." [32]

We can make no such finding here. The evidence as to defendant's guilt was overwhelming, and evidence as to his sanity was clearly sufficient to warrant the jury verdict that he was sane at the time of the commission of the crimes here involved.

*By the Court.*—Judgment affirmed.

---

[32] *Lock v. State* (1966), 31 Wis. 2d 110, 118, 119, 142 N. W. 2d 183. *See also: State v. Robbins* (1969), 43 Wis. 2d 478, 486, 168 N. W. 2d 544; *State v. Kramer* (1969), 45 Wis. 2d 20, 38, 171 N. W. 2d 919.